# MOLLIE SISSEL, Appellant, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY.

**Division One, November 25, 1908.**

1. **CONTRIBUTORY NEGLIGENCE: Not Pleaded: Demurrer.** Even though there is no plea of contributory negligence, the trial court is authorized to take a case from the jury, upon a demurrer to the evidence, whenever it is shown by plaintiff's own proof that there was such contributory negligence as to preclude a recovery. But without such a plea, defendant should not be permitted to affirmatively show that there was contributory negligence.

2. ————: **Section Hand: Heedless of Approaching Train.** The section hand was at work at the end of the ties, outside of the rails, and was facing the direction from which the train was approaching. By stepping back a foot or two he would have been out of danger, but he remained, and just as he was straightening up, he was struck by the pilot beam and killed. The foreman and another man were working inside the rails between him and the train, and they had dicussed with him that the train was coming, that it was running fast, and stepped out of the way. No whistle was sounded or bell rung, not even at the road crossing not far away. The view was clear, and the train could have been seen for a half mile. *Held*, that he was guilty of such contributory negligence as bars a recovery by his widow, and the trial court properly sustained a demurrer to the evidence.

3. ————: ————: ————: **Aware of Danger: Humanitarian Doctrine.** The engineer in charge of a railroad train, even though he sees a section hand at work on or near the track in time to stop the train so as to avoid striking him, and sees that he is not getting out of the way, is not bound to stop the train lest he be struck. Section men on the track are presumed to look after their personal safety, and to get out of the way when they know, as in this case, that the train is approaching; and unless there is something unusual in the circumstances, the humanitarian doctrine does not require that the train be stopped or slowed down to permit them to get out of its way. Nor does it apply because no distress signal was sounded or the bell rung, when the section man was at work at the end of the ties and by a single step could have got out of the danger limit, and the other men near him and nearest the train did step out of danger.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville*, Judge.

AFFIRMED.

*H. C. Young, A. W. Lyon* and *F. T. Stockard* for appellant.

(1) 1. A demurrer to the evidence admits every fact put in evidence by the opposing party and every reasonable inference from every such fact. Lynch v. Railroad (Mo.), 106 S. W. 74. 2. Under the pleadings in this cause there is but one issue, which is, "Did the deceased voluntarily bring his death upon himself?" State ex inf. v. Delmar Jockey Club (Mo. Sup.), 98 S. W. 539. 3. To charge that an act was voluntarily done is to exclude the charge that it was negligently done. 4. The statement of the legal conclusion that plaintiff was guilty of contributory negligence, without the statement of the facts constituting such negligence, tenders no issue whatever. Mallinkrodt Chem. Co. v. Nemnich, 169 Mo. 396. 5. Under the facts in evidence and the logical and reasonable inferences arising from those facts plaintiff should have been permitted to go to the jury. Lynch v. Railroad, supra; Morgan v. Railroad, 159 Mo. 262; Hinzeman v. Railroad, 199 Mo. 56; White v. Railroad, 202 Mo. 539; Abbot v. Railroad, 121 Mo. App. 582; Chamberlain v. Railroad, 133 Mo. 587; Reardon v. Railroad, 114 Mo. 384; Lloyd v. Railroad, 128 Mo. 595; Smith v. Railroad (Mo. App.), 107 S. W. 22. (2) The court erred in admitting evidence of the custom of section men in leaving track on the approach of trains. Chamberlain v. Railroad, 133 Mo. 587. (3) Evidence of the negligence of the engineer in running across the public highway crossing, just before he struck the deceased, without sounding the proper danger signals, is certainly evidence from which to infer negligence in striking

the deceased. It is also evidence from which to infer the fact that deceased may have been wholly unconscious that the train had crossed the highway. He may have been waiting for and expecting that very signal as a warning to look out for the train. Railroad v. Eisdale, 87 S. W. 1063.

*W. F. Evans* and *Woodruff & Mann* for respondent.

(1) The evidence shows that plaintiff's decedent knew of the approaching train; that he and others heard it herald its approach to the town of Republic, half a mile away, and discussed its identity; that he and his working companion Brewster, after setting the handcar off and after the train had then approached close enough to be in sight and enable them to determine whether it was a passenger or freight, looked at it and remarked that it was a freight, remarked upon its speed; that the deceased then went to work on the outside of the rails of the track, with his face toward the approaching train, which came making a noise that could be heard half a mile away, and there remained until he was struck; that all of his associates heard and knew of the approach of the train, and that by looking he could have seen, or listening he could have heard, and the witnesses establish the fact that he both did see and hear. Under these circumstances he was guilty of such contributory negligence, continuing up to the instant of the collision, as to bar recovery. Zumault v. Railroad, 175 Mo. 288; Sharp v. Railroad, 161 Mo. 214; Holmes v. Railroad, 103 S. W. 624; Tanner v. Railroad, 161 Mo. 497; Van Bach v. Railroad, 171 Mo. 346; Loring v. Railroad, 128 Mo. 359; Brocksmith v. Railroad, 205 Mo. 435. (2) And even if defendant's engineer in charge of the engine which struck and killed the deceased saw the deceased working beside the track with his face toward the approach-

ing train, as it labored with a great noise up the grade, he could infer that the deceased saw and heard the train and that he would follow the prudent and usual course as well as imitate the example of his fellows, and step out of the line of danger, if he was in danger, before the train struck him, and the engineer had authority to proceed upon that presumption and was not negligent in so doing. Van Bach v. Railroad, 171 Mo. 347; Boring v. Railroad, 194 Mo. 549; Guyer v. Railroad, 174 Mo. 350; Boyd v. Railroad, 105 Mo. 381; Moore v. Railroad, 176 Mo. 528. (3) And again, even if defendant's engineer was or should have been at his post looking down the track as he approached the place where the section gang was at work and where the deceased was struck and injured, what would he have seen? The section gang dispersing, no person on the track; the deceased on the north side of the rail at the end of the ties, facing the approaching train, presumably a prudent person having proper regard for his own safety. And if either the deceased or any of the others was in the line of danger from the approaching train, in plain view and making a loud noise, he would presumably be on the lookout for it and would step out of its way as it approached and leave the way clear. This would have been according to this court the conclusion of an ordinarily prudent manager of a moving train. Tanner v. Railroad, 161 Mo. 512; Sites v. Knott, 197 Mo. 712; Guyer v. Railroad, 174 Mo. 350. (4) An engineer in charge of a train has a right to presume that section men at work on the track will keep out of danger, and not until he is shown to have good reason to believe that they are not going to do so is it his duty to employ all possible means to avoid injuring them. It will not do to apply the last-chance rule in all its strictness to section men whose business it is to work upon and keep in repair railroad tracks, it being their duty to look out for

trains and see them and to move out of the way, it being common knowledge that these men often voluntarily wait until trains get dangerously close to them to step out of danger to let the trains pass by.   Evans v. Railroad, 178 Mo. 517; Helm v. Railroad, 185 Mo. 223; Carrier v. Railroad, 175 Mo. 482.

GRAVES, J.—Action by the widow of George Sissel, deceased, for the alleged negligent and wrongful killing of her husband by one of defendant's trains, and damages laid at the sum of $5,000. The petition, after the formal charges of the corporate existence of defendant and the business in which it was engaged, avers that for ten days prior to the date of the accident, alleged to be September 16, 1904, deceased had been in the employ of the defendant as section hand, and at the date of the accident was engaged in work upon its railroad tracks. The petition is exceedingly long, but the negligence charged therein is summarized thus in the concluding portion thereof:

"That the servants, agents and employees of defendant at the time and place aforesaid, when and where plaintiff's said husband was injured as aforesaid, and whilst so running, conducting and managing said locomotive and cars thereto attached, negligently and carelessly failed and neglected to give warning by the ringing of the bell, or the blowing of the whistle, to plaintiff's said husband of the approach of said locomotive and the cars thereto attached, when they saw or by the exercise of ordinary care could have seen the perilous situation in which plaintiff's said husband was placed, and thereby have warned plaintiff's said husband of the near and dangerous approach of said train so that he could have gotten out of the way.

"And by the negligence and failure of the said servants, employees and agents when they saw, or by the exercise of ordinary care could have seen, the perilous

situation in which plaintiff's said husband was placed, to use the brakes or other appliances provided for stopping said train, made up as aforesaid, and their negligence and failure to use the appliances provided for stopping said train, made up as aforesaid, and their negligence and failure to use the appliances provided and at hand for putting said train under control and stopping same before it struck and killed her said husband.

"And by the negligence and carelessness of defendant's said agents, servants and employees in charge of said engine and train of cars, in carelessly, negligently and in violation of law, running across the said railroad crossing, located as aforesaid at a point at about one-fourth of a mile northeast of where plaintiff's said husband was struck and fatally injured, without first either sounding the whistle or ringing the bell attached to said engine, when, if said engineer in charge of said engine had complied with the law in that respect, and rung said bell or blown said whistle, the warning thereby given could have been heard by plaintiff's deceased husband, and enabled him to be on guard against the near and dangerous approach of said train and thus lessened the chances of his receiving the injuries complained of herein.

"And by the oversight, omission, failure and neglect of the defendant's said section foreman, and defendant's other agents, servants and employees to instruct plaintiff's said husband to be on the lookout for passing trains and the quitting of his work at a proper and safe time and distance to avoid the danger arising from approaching trains."

The answer in the first paragraph admits the corporate capacity of the defendant and that it operated the railroad in question, and then concludes thus: "But denies each and every other allegation in said petition

and having fully answered, asks to be discharged with its costs."

The second paragraph of the answer is couched in this language:

"Defendant for another and further answer, and separate defense, states that the injuries sustained by George Sissel were brought about by, due solely, and the direct and immediate result of negligence and carelessness on the part of the said George Sissel, in that he voluntarily and knowingly placed himself upon the railroad track of the defendant, immediately in front of the approaching train, which he then and there saw, and there remained until struck by said engine, when by the exercise of ordinary care for his own safety, he could, by taking a step, even after the train was in a distance of one rod of him, have returned to a place of safety, but negligently and carelessly failed to do so, and that said injuries were the result of said carelessness and negligence on his part, and not due to any act or omission of defendant, its agents or servants.

"Wherefore, defendant prays to be discharged with its costs."

We set out this answer for the reason that a point is made thereon in the briefs. No reply was filed by the plaintiff, but the case proceeded as if one had been filed, and no special point is urged for the failure to file reply.

Upon trial the plaintiff was cast upon a demurrer to the evidence, forced to take a nonsuit, which the court *nisi*, upon timely motion, refused to set aside, whereupon she appealed to this court. The case therefore requires a full statement of the facts shown.

The plaintiff in her own behalf said that deceased had been in the employ of defendant for eleven days preceding the accident; that he died September 16th, at seven p. m., about two hours after he was brought

home; that deceased was a healthy man, twenty-eight years of age; that he had never done railroad work prior to the employment; that he complained of being hurt in the right side.

By Dr. Matthews, the coroner of the county, who examined the body of deceased the day after the injury and death, it was shown that the right collar bone was broken, the right side bruised and ribs broken and the right hip broken, or rather that the crest of the hip was mashed in. This physician also says that the injuries were confined to the right side and none were in front.

Michael Eagen testified that he was section foreman; that he, Charles Brewster, Jim Poston and deceased were at work one-half mile west of the depot at Republic; that deceased, Sissel, with Brewster, was working some forty or fifty feet to the northeast of the place where he and Poston were at work; that the railroad at that point ran from the northeast to the southwest; that Sissel and Brewster were between him and the depot station at Republic; that Sissel had been working for eleven days; that Sissel was on the north side of the track and Brewster was on the south side of the track, near the ends of the ties, leveling up ·the track; that Sissel was in such position that by moving back one foot he would be in an absolute place of safety; that there was a road crossing about half way between the depot at Republic and the place where they were working; that at the time of the accident Sissel was in a stooping position using his shovel, leveling off ·the ground; that Sissel had gotten about half straightened up when he was struck by the end of the pilot beam of the engine and knocked fifteen or twenty feet; that the whistle was sounded for the station at Republic, which was the last time the witness noticed the sound of the whistle; that no whistle was sounded or bell rung just before Sissel was struck; that the

speed of the train was not slackened, but that he was so excited he paid little attention to the fact; that after the train passed they picked up Sissel and took him home on the hand-car.

Such is the substance of the testimony of this witness on his examination in chief. On cross-examination further light upon the situation is given. The substance of the cross-examination is as follows: That Sissel gave his age at time of employment as twenty-seven years, and was a man in sound health, with good sight and hearing; that when he heard the train whistle, he called the attention of the men, including Sissel, to the fact; that they had their handcar off on a private road-crossing, which was against the rules of the company; that he thought the whistle was from No. 15, which was a World's Fair Special Passenger Train, as it was about due; that he then said to Brewster and Sissel, "Now I expect that is fifteen and the roadmaster might be on, and we had better run our car off the crossing and save giving us a jacking-up;" that they all talked about it being fifteen; that Brewster and Sissel went to remove the hand-car and he never noticed them any more until the train was getting close to deceased; that both he and Poston called to deceased to "look out," but hardly thought deceased heard them; that before this they all discussed the fact that the train was coming, that it was an up-grade there, and the train was making a loud noise by making a heavy exhaust or puffing, which he heard for half a mile; that the speed of the train was, in his judgment, thirty miles per hour; that he and Poston were working between the rails and deceased and Brewster on the outside of the rails; that as the train approached he and Poston and Brewster stepped aside, and when they did so were in position to have been seen by the engineer; that the approaching train could be seen for at least a half mile; that the train

was approaching from the northeast; that the end of the pilot beam which struck deceased projected at least twelve inches over the outside of the rails; that a man working on the ends of the ties, as was deceased, was within twelve inches of safety at any time; that the section men were in the habit of remaining on the track and at work until the trains were very close to them and step out of the way; that from the conduct of deceased after his employment, witness did not think he was an experienced railroad man; that in "dressing the track," such work as they were doing that day, two men generally worked together, two in the center of the track, between the rails, and two on the outer edge and outside of the rails; that witness and Poston were working in the center and deceased and Brewster on the outer edge, one upon each side and about ten feet apart; that Sissel was facing toward Republic and the approaching engine when he was struck.

Brewster was a witness and practically corroborated Eagen in all respects. He added, however, that as he and deceased returned to their work after removing the handcar they looked up and discovered that it was not the passenger train, No. 15, but a freight that was coming, and that he remarked to deceased, "And she is coming some, too." That they then each returned to their work. To further detail this witness's testimony would be but to restate in substance what was said by Eagen.

Poston was likewise a witness and his testimony agrees with that of the witness Eagen.

By witnesses Parker and Howard it was shown that they were in a buggy with a team, approaching the railroad at a crossing made by one of the streets of the city; that they observed the train, checked or turned their team to avoid a collision; that they heard no whistle or bell at that time, and that the train was

running thirty-three or thirty-four miles per hour; that they did not know what might have been done at the whistling post east of Republic.

J. Ed. Ward was another and the last witness for plaintiff. By him it was shown that he was or had been an engineer in the employ of what is now the Frisco road; that he was discharged in 1894; that in 1895 he worked in the same capacity for the Florence and Cripple Creek Railroad in Colorado and quit of his own volition; that since then he had not run an engine, but was engaged in the paint and paper business in Republic; that it was customary for engineers to look out for persons and obstructions on the track; that it was customary for engineers to keep "a sharp look out ahead at all times for section men, bridge men and any other obstructions or anything of that kind; and it is the rules that a danger signal should be sounded, the bell rung or whistle blown." That it was a common rule to give signals to section men whether they were in danger or not. The witness does not say such a custom prevailed upon defendant's road at or about the date of the accident.

On cross-examination he further said that when the engineer saw the section men dispersing and getting off he would naturally conclude that all of them would do so; that whether the engineer would pay less attention to men outside of the rails would depend upon circumstances; that the fact that the men were facing the approaching engine and began to disperse was one of the circumstances that would govern the engineer in determining that there was no danger; that if a man is facing an engineer the engineer always presumes that he will get off; that witness would not consider such a man in danger—to use his language: "No, I wouldn't consider him in danger if he sees me."

The foregoing is a full synopsis of the testimony, upon which the action of the court, *nisi,* is challenged in this court.

I. It is urged that the alleged plea of contributory negligence set out in the answer is but a legal conclusion, and hence this cause is here practically upon the general denial contained in the first count of the answer. The contention is that the second paragraph of the answer states a mere legal conclusion and does not plead the substantive facts. We are unable to concur in this contention. We think the answer sufficiently pleads facts to make it a good plea of contributory negligence. But, with the views we have of the merits of this case, this matter becomes wholly immaterial. Even though there was no plea of contributory negligence, yet the trial court would be authorized to take a case from the jury upon a demurrer to the evidence, whenever it was shown by plaintiff's own proof there was contributory negligence, such as to preclude a recovery. Without a proper plea of contributory negligence the defendant should not be permitted to show, affirmatively, by his proof, that there was contributory negligence, but where the witnesses for plaintiff disclose the facts, and the court is thus possessed of them, such court has but one course to follow, and that is to say that by plaintiff's proof no case has been made.

The rule which this court has followed is thus stated in 5 Ency. Plead. and Prac., p. 13: "The defendant may take advantage of contributory negligence which is shown in the development of the plaintiff's case, although he has not pleaded it as a defense."

In Hudson v. Railroad, 101 Mo. l. c. 30, SHERWOOD, J., has well said: "But while contributory negligence as a matter of defense has to be pleaded in order for a defendant to avail himself of it, by the introduction of evidence to sustain that issue, yet it does not thence follow that if the plaintiff's own testimony shows cir-

cumstances of contributory negligence which absolutely defeat his right of action and disprove his own case, the defendant is not at liberty to take advantage of such testimony although produced by the adversary. On the contrary, it is well settled in this State, as well as elsewhere, that such advantage may be taken of the plaintiff's testimony regardless of whether the special defense be pleaded or not. [Milburn v. Railroad, 86 Mo. 104, and cases cited; Schlereth v. Railroad, 96 Mo. 509.] When this occurs, it is the duty of the trial court to declare this result to the jury as a matter of law. [1 Shearm. & Redf., Neg. (4 Ed.), secs. 56, 112n; 2 Rorer on Railroads, pp. 1054, 1055.]''

This is the reasonable rule and the common sense rule. It matters not upon what ground the plaintiff's evidence discloses the absence of a meritorious cause, if such evidence is made to appear to the court, the court has but one duty to perform, i. e., say so, by proper instruction to the jury. In so doing the court simply says to the plaintiff, ''By your own proof you have no standing in a court of justice.''

Our views upon the merits follow.

II. Now going to the merits of this case, what should be done under the facts disclosed? There is no court which has not a sympathetic chord for the unfortunate widow under circumstances like these, but upon our sympathies we are not to determine cases. From this record there is no question that deceased knew this train was approaching. The matter was discussed and he himself assisted in removing the handcar. After the handcar was removed, he and the party with him discovered that it was not the passenger train, which they all thought it to be, but was a freight train, and they likewise discovered that it was ''going some.'' With this knowledge, the deceased returned to his work, and continued until about the time he was

struck, for he had only partially straightened up from his work when the fatal collision occurred.

Can it be said that there was not plain contributory negligence under the facts shown? We think not. If not under these facts, then we had as well say that there can be no contributory negligence in any case. Here we have the party possessed of the full knowledge of the approach of a swift moving train, deliberately going to work and giving no further heed to his own safety. Under such circumstances he had some duties to perform for himself before his widow could be allowed to recover. As said in Clancy v. Railroad, 192 Mo. l. c. 657: "The plaintiff, therefore, had no right to become so engrossed in his work as to become heedless of his danger, and as not to take proper precautions to observe the approach of cars."

Nor does the plea of the humanitarian doctrine avail the plaintiff in this case. What in our judgment should be the rule in this class of cases is well expressed by Burgess, J., in Evans v. Railroad, 176 Mo. l. c. 517, whereat he says: "But plaintiff claims that even if deceased was guilty of negligence, yet if defendant's employees in charge of the train became aware of his peril, or might, by the exercise of ordinary care, have become aware of it, in time to have enabled them by the exercise of ordinary care to have averted the injury, and they failed to exercise such care, plaintiff was entitled to recover. It will not do to apply this rule in all its strictness to section men whose business it is to work upon and keep in repair railroad tracks, for they are supposed to look after their own personal safety, and to know of the time at which trains pass, to look for them, and see them, and to move out of the way. It is of common knowledge that these men often voluntarily wait until trains get dangerously close to them, and then step out of danger and let them pass by, and to require

trains to stop upon all such occasions, when section men are discovered at work on the track, would not only be imposing upon railroads unjust burdens, but would greatly interfere with traffic and travel. Those in charge of trains have the right to presume in the first place that such persons will keep out of danger, and not until they have good reason to believe they will not do so, and then fail to use all proper means at their command to prevent injuring them, in consequence of which they are injured, or are injured by the willful negligence of those in charge of the train, should the defendant be held liable, and there was nothing of that kind in this case. Our conclusion is that the demurrer to the evidence interposed by defendant should have been sustained."

To the same effect is McGrath v. Railroad, 197 Mo. 97.

By plaintiff's learned counsel we are cited to Hinzeman v. Railroad, 199 Mo. 56, which case was previously reviewed by this court in 182 Mo. 611. The writer has expressed no views upon the facts in the Hinzeman case, nor is it necessary so to do in this case. The facts of the two cases are widely apart. In this case the personal knowledge of the approaching train was brought home to deceased. Not so in the Hinzeman case. In this case the evidence conclusively shows that upon the approach of the train the section men began to get off of the track and the engineer had a right to presume that they would all do so, including the deceased, especially where the facts show that he was facing the moving engine.

To our mind the facts of the case at bar not only show conclusively the contributory negligence of deceased, but fail to show negligence upon the part of defendant. This deceased was not on the track, but to the side thereof and twelve inches from absolute safety.

McGee v. Railroad.

From danger to safety was but the act of a second's time—the taking of a short step. The engineer, if he saw anything, saw these men moving out of the way and was justified, under these circumstances, in entertaining the presumption that at the proper instant deceased, who was facing the engine, would take the one step.

It is urged that no signals were given at the crossing to the east of the point where these parties were at work.

Grant it that no bell was sounded or whistle blown at the crossing; grant it further that such facts were material at all, which we do not grant in this kind of a case, except for the argument, yet they are unavailing where knowledge of the approaching train was shown. The only purpose of signals is to give warning of the approach of a train, but the failure to give them can work no injury where the party knew the train was fast approaching.

The judgment of the trial court is right and should be and is affirmed. *Woodson, J.,* concurs *in toto; Valliant, P. J.,* and *Lamm, J.,* concur in the result and in all of the opinion except what is said therein with reference to the Evans and Hinzeman cases.

