STATE ex rel. MARGARET O'MALLEY, Respondent, v. JOHN U. MUSICK et al., Appellants.

Springfield Court of Appeals, June 6, 1910.

1. **APPELLATE PRACTICE: Defective Abstract: Affidavit for Appeal: Motion to Dismiss Appeal Filed After Submission on Merits.** A motion to dismiss an appeal based on the insufficiency of the affidavit for appeal must be filed before the case is submitted on its merits, for after submission the appellate court will not go behind the order granting the appeal to determine whether the affidavit is sufficient or whether any affidavit whatever was filed.

2. ———: ———: ———: **Presumption as to Sufficiency of Affidavit.** Where it appears from the short form transcript in the office of the clerk of the court of appeals, that the trial court, acting under Section 808, R. S. 1899, deemed the affidavit for appeal sufficient and granted the appeal at the same term of court at which the motion for new trial was overruled, and no counter abstract has been filed showing an insufficient affidavit, the presumption will be indulged that the affidavit was not only filed but was in substantial statutory form.

3. **NOTARY PUBLIC: Action on Bond: Statute of Limitations.** The three year Statute of Limitations relating to notaries public and actions on their bonds, is a special statute, which has

no exception nor saving clause, under or by which such limitation shall be suspended, and being a special limitation the provisions of the general statutes are not applicable.

4. ———: ———: ———: **Fraud.** In a suit on a bond of a notary public on account of the fraud of the notary in certifying to a false acknowledgment, it appeared that the false certificate had been made more than five years before the action was instituted, but the plaintiff alleged in her petition that the suit was brought within three years after the discovery of the fraud and that during all the time plaintiff was a married woman. It appeared that the notary had made no continuing effort to conceal the fraud after making the false certificate. *Held*, that the suit was barred by the Statute of Limitations of three years, especially applicable to notaries public, and that the provisions of the general Statute of Limitations relating to persons under disability, or the one which provides that the time of the discovery of the fraud shall be deemed the date when the cause of action accrues, do not govern.

5. **STATUTE OF LIMITATIONS: Special Statutes: Persons under Disability.** When a special statute of limitations contains no saving clause in favor of persons under disability of marriage, such statute runs as well against married women as other persons, and the courts cannot write into such statute a disability which the law has not provided for. If the Statute of Limitations makes no exception in favor of married women, the courts will make none.

6. **NOTARIES PUBLIC: Action on Bond: Statute of Limitations: Common Law.** No provision of the general Statute of Limitations or any other provision of the statute specially provides when a cause of action on a notary's bond accrues. The solution of the question therefore can only be had by recourse to the common law.

7. ———: ———: ———: **Fraud: Accrual of Cause of Action: Common Law.** Under the common law, to which we must look to determine when the cause of action accrues on a notary's bond on account of a false and fraudulent certificate of acknowledgment made by the notary, the action accrues from the time of the commission of the fraud, so as to start the Statute of Limitations, with the exception, however, that any act of the notary done to lull the wronged party into non-action or to prevent her from discovering the fraud, will prevent the running of the statute; but mere silence on the part of the wrongdoer is not enough.

8. **FRAUD: Statute of Limitations:. Discovery of Fraud.** A party seeking to avoid the bar of the Statute of Limitations on ac-

count of the fraud of the defendant must aver and show that he used due diligence to detect the fraud, and if he had the means of discovery in his power he will be held to have known it.

9. **COMMON LAW.** The "common law" imports a system of unwritten law, not evidenced by statute, but by tradition and the opinions and judgments of the sages of the law.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

REVERSED.

*Frank H. Braden, George W. Lubke* and *George W. Lubke, Jr.,* for appellants.

(1) Since the act or omission of the notary must have accrued while he was yet a notary, it follows that after the notary has been out of office three years no one can sue on the bond. This statute is, therefore, like the one which limited the actions on constables' bonds to two (now three) years after the expiration of the officer's term. State ex rel. v. Schaeffer, 12 Mo. App. 276. (2) Where there is no saving cause to a limitation statute the courts cannot write one into it. Collins v. Pease, 146 Mo. 139; Revised Statutes 1899, sec. 4292; State ex rel. v. Thompson, 81 Mo. App. 558; Geren v. Railroad, 60 Mo. 405.

*Thomas D. Cannon* and *F. C. O'Malley* for respondent.

(1) The court did not err in refusing to give to the jury instruction No. 3 in the nature of a demurrer to the evidence, at the close of the whole case. Tennent v. Insurance Co., 133 Mo. App. 352; State ex rel. v. Ryland, 163 Mo. 280; Revised Statutes 1899, sec. 912-917; State ex rel. v. Grundon, 90 Mo. App. 271; State ex rel. v. Balmer, 77 Mo. App. 470; State ex rel. v. Thompson, 81 Mo. App. 561; State ex rel. v. Meyer, 2 Mo. App. 415; Doran v. Butler, 74 Mich. 650; Curtis v. Colby, 39 Mich. 460.

NIXON, P. J.—A preliminary question must be disposed of before we undertake a consideration of the errors assigned.

This case was argued and submitted on the merits by counsel for both parties on May 6, 1910, in this court, no suggestion being made during the argument of any alleged defects in appellants' abstract. On the 10th day of May, 1910, after the attorneys had returned to St. Louis, respondent filed in this court a motion to dismiss the appeal and a motion to affirm the judgment, supported by a printed brief on the questions presented. Copies of these motions and this brief were served on appellants' attorneys in the city of St. Louis on May 7, 1910, and a form of service sworn to before a notary public is attached to each motion.

Our rule 25 provides: "A party in any cause, desiring to present a motion either to dismiss an appeal or writ of error, or to affirm the judgment of the trial court, shall notify the adverse party, or his attorney of record, in writing, of his intention to file said motion at least five days before the same is filed, and shall accompany said notice with a copy of said motion, and in all cases the court will require satisfactory proof that proper notice has been given."

As the notice in this case was given on May 7, 1910, and the motion filed on May 10, 1910, it is clear that this rule has not been complied with and that this court is not obliged to consider the motions.

The motion to dismiss alleges (1) that no affidavit for appeal was ever filed, (2) that the record does not show that an affidavit for an appeal was filed, and (3) that no appeal was ever allowed.

The Supreme Court has held that the objection to the sufficiency of an affidavit for appeal must be taken by motion to dismiss *before the case is submitted on its merits;* that after submission, *the court will not go behind the order granting the appeal to determine whether the affidavit is sufficient or whether any affi-*

*davit whatever was filed.* [St. Louis Bridge & Construction Co. v. M., C. & N. R. Co., 72 Mo. 664. This ruling was followed by the Supreme Court in the case of Cooley v. K. C., P. & G. R. Co., 149 Mo. 487, 51 S. W. 101.]

In the case of State ex rel. Title Guaranty & Trust Co. v. Broaddus et al., 210 Mo. 1, 108 S. W. 544, BURGESS, J., after reviewing many cases (including the case of United Iron Works Co. v. Sand Ridge Lead and Zinc Co., 126 Mo. App. 238, 102 S. W. 1104) says: "The Courts of Appeals have seemingly been disposed to construe section 808, supra, according to its strict letter, rather than its spirit and intention, which latter method of construction has been followed by the Supreme Court." That was a proceeding by mandamus to require the judges of the Kansas City Court of Appeals to set aside its order dismissing an appeal because of an alleged defective affidavit for appeal.

This court will follow the construction of section 808 laid down by the Supreme Court and will follow the Supreme Court in its ruling that a motion to dismiss based on the insufficiency of the affidavit for appeal must be filed before the case is submitted on its merits, and that, after submission, *the appellate court will not go behind the order granting the appeal* to determine whether the affidavit is sufficient or whether any affidavit whatever was filed.

This question is considered fully in the opinion in the case of State ex rel. Brown v. Broaddus, 216 Mo. 336, 115 S. W. 1018. The appeal in that case (as in this) was taken on the short form to the Kansas City Court of Appeals where a judgment for plaintiff was reversed. Plaintiff thereupon applied to the Supreme Court for a writ of certiorari to bring up the record in that case to the end that the proceedings in the Kansas City Court of Appeals might be quashed. The writ was issued. On examination by the Supreme Court, it appeared that the abstract did not contain the affidavit

for appeal or a statement of its contents, and relator contended that the Kansas City Court of Appeals acquired no jurisdiction of the cause. The abstract in that case did contain a recital that "said defendant filed its application and affidavit for an appeal from said judgment, which application . . . was allowed and said appeal granted." (The similarity of this language to that appearing in the abstract in the present case is noticeable.) The Supreme Court held that this language sufficiently showed that an affidavit was filed. The court, speaking through VALLIANT, C. J., said:

"It is conceded that in all other respects the record is sufficient, *and there being no counter abstract* filed, we hold that the statement in the abstract to the effect that the record proper of the circuit court shows that during the same term in which the motion for new trial was overruled the defendant filed an affidavit for an appeal and that on that affidavit the court made the order allowing the appeal to the Kansas City Court of Appeals, is sufficient to confer appellate jurisdiction of the cause on the court, *notwithstanding neither the affidavit for the appeal nor a statement of its contents appears in the abstract.*"

The Supreme Court in that case, during the course of the opinion, referred to the short transcript filed by the appellant with the clerk of the Kansas City Court of Appeals which contained a certified copy of the record entry of the judgment *and the order granting the appeal,* wherein it was recited that an affidavit was duly filed "and the same being by the court examined and deemed sufficient an appeal in this cause is granted to the Kansas City Court of Appeals."

The Supreme Court in this connection say:

"The circuit court is a court of general jurisdiction and whenever its act is in question it is supported by a strong presumption of its regularity. . . .

"Section 808 prescribes what the affidavit shall state and when such an affidavit is presented within

the time prescribed, section 809 says the court 'shall make an order allowing the appeal.' Therefore when the affidavit is presented in due time and the court has examined it and adjudged it sufficient, its discretion is ended and it must make the order. And when we come to review the action of the court we must presume, until the contrary is shown, that there was an affidavit and that it was in substance as the statute requires."

So, in the case at hand, it appearing from the short form transcript in the clerk's office that the trial court, acting under section 808, Revised Statutes 1899, deemed the affidavit for appeal sufficient and granted the appeal at the same term of court at which the motion for new trial was overruled, and no counter abstract having been filed showing an insufficient affidavit, we also will indulge the presumption that the affidavit was not only filed but was in substantial statutory form.

## OPINION.

This suit is upon a bond of five thousand dollars which defendant John U. Musick gave to qualify himself as a notary public for the city of St. Louis, the other two defendants, Edward Christ Ette and David M. Musick, having signed the bond as sureties and been accepted as such.

The action was begun in the St. Louis City Circuit Court, January 12, 1906. The case was tried before a jury and resulted in a verdict on May 9, 1907, for the full amount of the bond, and judgment was rendered by the court against all the defendants for the penalty of the bond, and an award of execution against them for the five thousand dollars damages and costs.

Relator's amended petition alleged that relator, Margaret O'Malley, is a married woman, and that the alleged fraud, negligence or carelessness complained of by her in the petition were discovered by her within three years next before the commencement of this suit;

that defendant, John U. Musick, was by the Governor of the State, on October 1, 1897, commissioned a notary public for the city of St. Louis; that thereafter, on October 8, 1897, said John U. Musick, as principal, and his co-defendants, as sureties, executed their bond to the State in the sum of five thousand dollars, conditioned that said John U. Musick should faithfully perform the duties of said office according to law, in which event the obligation should be void; otherwise of full force and effect. That among his duties as such notary public was the taking of acknowledgments to deeds, and to ascertain and certify the personalty of the cognizor named in such acknowledgments; that said John U. Musick was guilty of a breach of this bond in that, on or about May 12, 1900, the relator, Margaret O'Malley, being the owner of a lot of ground in block 2175 of the city of St. Louis, fronting eighty feet on the north line of Caroline street, and having a depth northwardly of 123 feet, and known as numbers 2552 to 3559 Caroline street, in said city, with the improvements and appurtenances, all valued at $20,000 and incumbered for $13,500, the defendant, John U. Musick, and Louis Wheelock entered into a conspiracy and collusion to cheat and defraud the relator out of her said property known as the Caroline street property; that, pursuant to said scheme to defraud the relator, "said defendant, John U. Musick and Wheelock did represent to relator that they had a client, one George H. Dunford, who owned a tract of land in Georgia worth five thousand dollars, and that their client desired to exchange his land for relator's interest in her Caroline street property; that said Georgia land was described by defendant, John U. Musick, and said Wheelock as being all of a tract of land lying in the county of Montgomery and State of Georgia, described as follows, to-wit: All of lot number 44 of the Thomas Cooper tract of 77,000 acres, containing one thousand acres on the surveyor's plat of the Cooper grant of said

county." That relator made and delivered to them a good and valid conveyance, by which she conveyed to said George H. Dunford all her interest in the Caroline street property; that relator on May 28, 1900, desired to take the title to the said Georgia land in the name of her daughter, Mary M. O'Malley, and that then and there defendant, John U. Musick, and Louis Wheelock did deliver to the relator a deed purporting to convey to said Mary M. O'Malley the said Georgia land, which deed was accepted by relator as a good and valid deed to the land situated in the State of Georgia, in said deed described; that the person who executed this deed purporting to convey to Mary M. O'Malley this Georgia land personated said George H. Dunford, and acknowledged it before said defendant, John U. Musick, as notary public; that said John U. Musick, on May 12, 1900, as such notary public did certify under his official seal and signature that on said day, George H. Dunford, known to him, acknowledged that he executed the said deed as his free act and deed; that relying upon said notarial acknowledgment, relator accepted said deed as the genuine deed of George H. Dunford; that no such person as George H. Dunford then existed, and that defendant, John U. Musick, had no such client as George H. Dunford; that George H. Dunford was not the owner of the tract of land described in the deed of said George H. Dunford, and that the fact was known to John U. Musick, the defendant, at the time aforesaid, and at the time when the said deed of said George H. Dunford was delivered to the relator, and at the time that said notary public took the acknowledgment to the said deed of George H. Dunford; that the person who acknowledged said deed in the name of George H. Dunford was not George H. Dunford, and that defendant, John U. Musick, knew this at the time; and that, by reason of the fraud, negligence and carelessness of said defendant, John U. Musick, in taking the acknowledgment to said deed as aforesaid, relator was damaged

in the sum of $5000, with interest thereon from May 28, 1900. She prayed judgment for the penalty of the bond, and that execution issue thereon, and that she be allowed interest from May 28, 1900, and costs.

The defendants filed their answers to the amended petition. The defendant John U. Musick answered for himself alone and the other two answered jointly. Both answers admitted that John U. Musick was a notary public for the city of St. Louis at the time of the trade of properties, but denied generally all the other allegations in the amended petition. Both answers alleged affirmatively that relator was not entitled to maintain this suit for the reason that the same was instituted more than three years after relator's pretended cause of action accrued, and that therefore the action was barred by section 8836, Revised Statutes 1899.

To these answers, relator filed separate replies denying the allegations of the answers and stating affirmatively that on May 12, 1900, relator was, and still is, a married woman, and that the fraud, negligence and carelessness complained of in her petition was first discovered by her within three years before the institution of the suit.

As stated, relator obtained judgment against the defendants for the penalty of the bond, five thousand dollars, from which the defendants have appealed.

The evidence tended to support the allegations of the petition as to the appointment of John U. Musick and the fraudulent acknowledgment, although George H. Dunford testified that he executed the deed to Mary O'Malley and acknowledged the same before John U. Musick as notary public.

It will be noticed that the defendants pleaded the Statute of Limitations as a defense to relator's action, and that presents the material question for consideration by this court. The appellants charge that the trial court erred in refusing to give their offered in-

structions in the nature of demurrers to the evidence at the conclusion of all the evidence in the case.

This suit was begun January 12, 1906, five years and eight months after the commission of the act complained of, that is, after the execution of the certificate of acknowledgment which was dated May 12, 1900, and more than four years after the expiration of John U. Musick's term of office as notary. The condition of the bond of John U. Musick was that he should faithfully perform the duties of his office as notary public. The statute relating to notaries has a special limitation which has no exception or saving clause under or by which such limitation may be suspended. This statute says that any person injured may sue on the bond, "but no suit shall be instituted against any such notary or his sureties more than three years after such cause of action accrues." [Sec. 8836, R. S. 1899.] It will be seen that this is a special Statute of Limitations and made specially applicable to notaries public.

The general Statute of Limitations, section 4273, provides for five years' limitation, "First, all actions upon contracts, obligations or liabilities, express or implied, . . .; fifth, an action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery of the aggrieved party, at any time within ten years, of the facts constituting the fraud."

The general statute also provides, section 4290, "If any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented."

Section 4279 of the general statute also provides that persons under disability may bring the action after the disability is removed within the time specified, and a married woman is enumerated as a person under disability.

Section 4292 of this general statute further provides: "The provisions of this chapter shall not extend to any action which is or shall be otherwise limited by any statute; but such action shall be brought within the time limited by such statute."

The provisions referred to appear in chapter 48, Revised Statutes 1899, concerning limitations of real and personal actions. Hence, under this last provision—section 4292—the limitation as to notaries public, being a *special* limitation of three years, renders the provisions of the general statute inapplicable. And it has been accordingly held that the saving clause as to nonsuits declared by the general Statute of Limitations does not apply to suits on notarial bonds. [State ex rel. v. Thompson, 81 Mo. App. 1. c. 558.] To the same effect is the case of State ex rel. v. Hawkins, 103 Mo. 251, 15 S. W. 530, holding that the general Statute of Limitations does not apply to actions on notarial bonds. Hence, as the act or omission of the notary public must have occurred while he was yet a notary, it follows that after a notary has been out of office three years, no one, under this provision of the law, could sue on the bond. The statute is therefore like the one which limits actions on bonds of constable to three years after the expiration of that officer's term, and it has been held that it is competent for the Legislature to provide that sureties on the bond of a constable shall incur no liability for violations of his official duty not discovered and sued for within two (now three) years from the expiration of his term. [State ex rel. Walton v. Schaeffer, 12 Mo. App. 276.]

Nor will relator's disability by reason of being a married woman avail her or prevent the running of the Statute of Limitations in the case of a special Statute of Limitations. When a special Statute of Limitations contains no saving clause in favor of persons under disability of marriage, such statute runs as well against married women as other persons, and the courts

cannot write into such statute a disability which the law has not provided for. [Collins v. Pease, 146 Mo. 1. c. 139, 47 S. W. 925.] If the Statute of Limitations makes no exception in favor of married women, the courts will make none. [25 Cyc. 1253.]

But, while it is true that an action on a notary's bond, by the express terms of section 8836, Revised Statutes 1899, must be commenced within three years after the cause of action against the notary *accrues,* the question yet remains to be solved as to *when* such action accrues. As we have seen, under the decisions cited, no provision of the general Statute of Limitations or any other provision of our statutes expressly provides when such actions accrue. The solution of the question, therefore, can only be had by recourse to the common law. Section 4151, Revised Statutes 1899, provides:

"The common law of England, and all statutes and acts of Parliament made prior to the fourth year of the reign of James the First, and which are of a general nature, not local to that kingdom, which common law and statutes are not repugnant to or inconsistent with the Constitution of the United States, the Constitution of this State, or the statute laws in force for the time being, shall be the rule of action and decisions in this Stat :, any law, custom or usage to the contrary notwithstanding."

The "common law" imports a system of unwritten law, not evidenced by statute, but by tradition and the opinions and judgments of the sages of the law. [Riddick v. Walsh, 15 Mo. 519.]

The question as to when an action for fraud accrues so that the Statute of Limitations begins to run has given rise to much confusion and conflict of authority as shown by divergent lines of authority. One line of authorities holds that the statute runs from the time when the fraud is discovered, unless, in the exercise of reasonable diligence, it might have been discovered sooner, and these authorities hold that secret

fraud is the same thing as concealed fraud and that fraud conceals itself. The other line of authorities holds that the Statute of Limitations at common law commences to run from the time of the commission of the fraud unless it is shown that the tortfeasor has committed some affirmative act of concealment or made some misrepresentation to exclude suspicion and prevent inquiry. The law on this subject, as declared by courts holding the latter view, is well stated by MITCHELL, J., in the case of Smith v. Blachley, 198 Pa. 173, 53 L. R. A. 849, which was an action for fraud in which a plea of the Statute of Limitations was interposed as a defense. It is there said: "The cases which hold that, where fraud is concealed, or as sometimes added, conceals itself, the statute runs only from discovery, practically repeals the statute *pro tanto*. Fraud is always concealed. If it was not, no fraud would ever succeed. But, when it is accomplished and ended, the rights of the parties are fixed. The right of action is complete. If plaintiff bestirs himself to inquire, he has ample time to investigate and bring his action. If both parties rest on their oars, the statute runs its regular course. But, if the wrongdoer adds to his original fraud affirmative efforts to divert or mislead to prevent discovery, then he gives to his original act a continuing character, by virtue of which he deprives it of the protection of the statute until discovery."

In reply to the defense of the Statute of Limitations, relator pleaded in this case "that at the time of the commission of the alleged fraud and at all times thereafter she was and now is a married woman; and that the fraud, negligence or carelessness complained of was first discovered by relator within three years before the institution of this suit."

The evidence showed that in the exchange of the relator's property in St. Louis for the Cooper lands in Georgia and in the negotiations in regard thereto, there were no personal relations or communications

between relator and defendant John U. Musick; that the sale was effected between relator and George H. Dunford by intermediaries, Martin T. Sweeney acting as agent for relator, and John U. Musick taking the acknowledgment of the Dunford deed, which he delivered to Martin T. Sweeney as the agent of relator. After the deeds had been exchanged by the parties on the date of the sale, there is no evidence that the parties ever had any further dealings or communications either directly or indirectly with each other, the record being absolutely silent in that regard. So that the pleadings and evidence show mere silence or passiveness on the part of John U. Musick subsequent to the exchange of the deeds of conveyance.

The petition alleges that the fraud complained of was discovered by relator within three years before the commencement of her suit. It does not allege what the discovery was, nor does the proof show that it was on account of anything that defendant John U. Musick said or did that it was not discovered earlier. These facts, if true, do not of themselves, under the law of this State, bring the case within the exception which would prevent the running of the Statute of Limitations, but there must have been some act done by the defendant to lull the relator into non-action or prevent her from discovering the fraud, and the concealment of the facts by the defendants by mere silence was not enough.

In the case of Shelby County v. Bragg, 135 Mo. l. c. 300, 36 S. W. 600, it was said: "A party seeking to avoid the bar of the statute on account of fraud must aver and show that he used due diligence to detect it, and if he had the means of discovery in his power, he will be held to have known it. . . . A party cannot avail himself of this exception to the statute where the means of discovering the truth were within his power and were not used. . . . *Concealment by mere silence is not enough.* There must be some trick or contrivance intended to exclude suspicion and prevent in-

quiry. There must be reasonable diligence; and the means of knowledge are the same thing in effect as knowledge itself." Again, in Farnan v. Brooks, 9 Pick. 246, "If the aggrieved party knew of the fraud when it was committed, or had full possession of the means of detecting it, which is the same as knowledge, neglect to bring forward his complaint for more than five years will deprive him of his remedy and ought to, upon the very principles and reasons upon which the Statute of Limitations was enacted." Referring to these quotations, the court in the case of Callan v. Callan, 175 Mo. l. c. 361, 74 S. W. 965, say: "Indeed the authorities are all one way on this question." (Citing numerous cases.) "And 'the bill of complaint should set forth the nature of the transaction fully, and also the acts of concealment, and the time of its discovery. . . . The concealment contemplated by the statute is something more than mere silence; it must be of an affirmative character and must be alleged and proved so as to bring the case clearly within the meaning of the statute.'" See also State ex rel. v. Hawkins, 103 Mo. App. 25, 77 S. W. 98, as modified and explained in Smith v. Settle, 128 Mo. App. 379, 107 S. W. 430.

Our conclusion is that this action was, under the law, clearly barred by the Statute of Limitations at the time it was instituted. This conclusion results in the reversal of the judgment, and it is so ordered. All concur.