STATE OF MISSOURI, AT THE RELATION OF THEODORE HARDT AND MARY HARDT, HIS WIFE (RELATORS), APPELLANTS, v. WILLIAM DUNN AND UNITED STATES FIDELITY & GUARANTY COMPANY, A CORPORATION, (DEFENDANTS), RESPONDENTS.—129 S. W. (2d) 17.

St. Louis Court of Appeals. Opinion filed June 6, 1939.

Motion for rehearing overruled June 20, 1939.

*Irl B. Rosenblum* for appellants.

*Watts & Gentry* and *Herbert E. Bryant* for respondents.

HOSTETTER, P. J.—This suit was instituted on November 9, 1935, in the circuit court of St. Louis County. It is a suit brought by relators, Theodore Hardt and Mary Hardt, husband and wife, against defendants as principal and surety on the bond of a notary public.

The bond was in conventional form, the penalty being in the sum of $5000, and was executed on December 6, 1927.

The amended petition set out in substance that on August 26, 1930, they signed a paper purporting to grant to the Phillips Pipe Line Company an easement to construct a pipe line for transporting oil, gas, etc. across their 6.21 acre tract located in St. Louis County, Missouri, and that defendant Dunn fraudulently executed an acknowledgment thereto as of the same date when, in fact, they never acknowledged same at all, and sought judgment for $5000, the penalty of the bond, with execution for $2000 damages sustained by them in successfully conducting a suit to hold the easement void and to oust said company from their premises.

The answer contained a general denial, and a plea of the three year bar of the Statute of Limitations as set out in section 11742 in chapter 80, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., sec. 11742, p. 6137) relating to notaries public and containing, *inter alia,* the following: "Said bond after having been so recorded, shall be filed in the office of the Secretary of State, and may be sued on by any person injured; but no suit shall be instituted against any such notary or his sureties more than three years after such cause of action accrued."

The cause was tried to a jury on the 25th and 26th of October, 1937, resulting in a verdict and judgment in favor of plaintiffs for the amount of $5000, the penalty of said bond, and $1100 damages. In due time defendants filed their motion for a new trial which contained, *inter alia,* the following ground: 5. The court erred in overruling the demurrer to the evidence offered by the defendants at the close of the evidence offered by plaintiffs.

On December 16, 1937, the trial court sustained defendants' motion for a new trial on said fifth ground thereof, stating that "the court erred in overruling the demurrer to the evidence offered by the defendants at the close of relators' evidence." Thereupon relators duly perfected their appeal to this court. The sole question involved in this appeal is whether relators' suit was barred by the three-year Statute of Limitations.

The evidence, all of which was offered by relators, shows that the right-of-way contract referred to as relators' exhibit A, was recorded in the office of the Recorder of Deeds in St. Louis County, Missouri, on January 5, 1931, approximately four years and ten months prior to the institution of the present suit, and, further, that on September 9, 1932, the relators herein were actually furnished at their request with a photostatic copy of said contract as recorded, being some three years and two months prior to the institution of this suit. The photostatic copy showed on its face that it had been recorded in the Recorder of Deeds' office on January 5, 1931. Plainly, the relators' cause of action accrued on January 5, 1931, when the contract was recorded,

or on September 9, 1932, when an actual photostatic copy of the contract *as recorded* was given to relators and was read by them at that time, or, if not read in its entirety, when they had ample opportunity to do so. We have reached the conclusion that relators' claim is barred by said three-year Statute of Limitations.

The following facts appear to be affirmatively shown in evidence adduced by the relators: They signed the "Right-of-Way Contract" on August 26, 1930. Thereafter, it was falsely acknowledged, and, by reason of such acknowledgment, it was duly recorded in the office of the Recorder of Deeds of St. Louis County on January 5, 1931. Mary Hardt, one of the relators who claimed that she generally attended to things herself, testified: "There was so much fighting going on about this pipe line in our neighborhood," and, in answer to a question as to when was the first time she found out about its being recorded, replied: "In August, 1932, I wrote Mr. Rittenbusch to kindly send me a copy of this contract and then it took him until the month of September that he sent it." On her cross examination she was handed plaintiffs' Exhibit A by defendants' counsel and testified that both she and her husband signed the original contract, of which Exhibit A was a photostat; that she signed it some time in August; that she wrote on August 26, 1932, to the Phillips Pipe Line Co., and asked them for a copy of the contract; that after that, in September (the latter part), she received a letter from Phillips Pipe Line Co., enclosing the photostatic copy of the contract, Exhibit A; that the Phillips Pipe Line Company's letter might have been dated September 7th, and that Mr. Ritterbusch, to whom she had written, had said that he had received her letter of August 26th, and that he had been out of town for a few days, but that now he was enclosing this photostatic copy.

The witness further testified: "Q. Now, when you received this right-of-way contract, did you read it? A. I sure did. Q. Very carefully? I mean, referring—you read the whole contract? A. Yes."

She disclaimed seeing the certificate of the recorder that it was filed for record on January 5, 1931. After examining the instrument, she said, "No, if I did, it passed my memory." "Q. You don't remember that? A. No, I really don't because I had so much trouble after that, and that I just didn't."

Theodore Hardt, the husband, testified that he had signed the original contract; that he didn't know his wife had written for a copy of the contract "until she had it;" that he was sick and worried; that she did tell him it had been recorded in the Recorder of Deeds' office; that he left everything up to Mrs. Hardt.

The proven and conceded facts bearing on the question are as follows: The instant suit on Notary Dunn's bond was brought on November 9, 1935. Exhibit 1 (Right-of-Way Contract) was signed by relators on the 26th day of August, 1930. The false acknowledg-

ment appears to have been made on the instrument on August 26, 1930, but in any event it was made prior to January 5, 1931, the day it was filed for record in the office of the Recorder of Deeds of St. Louis County, this being about four years and ten months before the filing of the instant suit. The relators were furnished with a photostatic copy of the Right-of-Way Contract as recorded, on September 9, 1932, three years and two months prior to the institution of the instant suit.

The relators had constructive notice of the fraud after the instrument was filed for record on January 5, 1931, and actual notice when they were furnished a photostatic copy of the instrument on September 9, 1932, both constructive and actual notice being more than three years before this suit on the Notary's bond was begun.

In State ex rel. O'Malley v. Musick, 145 Mo. App. 33, 130 S. W. 398, the Springfield Court of Appeals had the exact question before it as to when the cause of action accrues upon a bond of a notary public. In that case one Musick, a notary public, was alleged to have falsely acknowledged an instrument in writing. Some five years and eight months elapsed after the execution of the certificate before suit was brought. The defense of the Statute of Limitations was interposed and said court held, in its opinion, that the action under the law was clearly barred by the Statute of Limitations at the time it was instituted. In its opinion the court said:

"The statute relating to notaries has a special limitation which has no exception or saving clause under or by which such limitation may be suspended. This statute says that any person injured may sue on the bond, 'but no suit shall be instituted against any such notary or his sureties more than three years after such cause of action accrues.' [Sec. 8836, R. S. 1899.] It will be seen that this is a special Statute of Limitations and made especially applicable to notaries public. . . ."

Further the opinion holds that "the limitation as to notaries public being a special limitation of three years, renders the provisions of the general statute inapplicable." The court goes on to discuss then in the opinion as to when an action on a notary's bond accrues, within the meaning of the three-year Statute of Limitations. After a review of the various authorities the court determined that the cause of action had accrued more than three years prior to the institution of the suit.

The decision of the Springfield Court of Appeals in this case was quashed by the Supreme Court because it was one of the cases reassigned from the St. Louis Court of Appeals to the Springfield Court of Appeals immediately after its creation, and thereafter said case was duly assigned to the St. Louis Court of Appeals, and this court adopted the opinion of the Springfield Court of Appeals, and its de-

cision and opinion adopting the opinion of the Springfield Court of Appeals is found at 165 Mo. App. 214, 145 S. W. 1184.

The opinion in the Musick case, having the O. K. of the Springfield and the St. Louis Court of Appeals, has never been overruled, but was quoted from approvingly in the case of Obermeyer v. Kirshner, 225 Mo. App. 734, 38 S. W. (2d) 510, l. c. 514.

There was no showing of any effort on the part of Notary Dunn or on the part of the Phillips Pipe Line Company to conceal the fraud or to prevent the relators from obtaining knowledge of the false certificate of acknowledgment, but on the contrary the instrument, *as falsely acknowledged,* was duly recorded in the office of the Recorder of Deeds in St. Louis County on January 5, 1931, and, in addition thereto, relators were furnished a photostatic copy of the recorded instrument in September, 1932, both dates being more than three years prior to November 9, 1935, the date of the filing of the instant suit on the Notary's bond.

It is urged by counsel for relators that as defendants offered no testimony, they cannot avail themselves of the defense of the three year bar of the Statute of Limitation. Ordinarily, of course, a defendant pleading and relying on the Statute of Limitations as a defense against plaintiff's alleged cause of action must prove facts necessary to support such defense, but in this instance the facts which show that the three year Statute of Limitations constituted a bar to relators' cause of action, were alleged in relators' petition and were testified to by them. [Sissel v. St. Louis & S. F. Railway Co., 214 Mo. 515, 113 S. W. 1104, 15 Ann. Cas. 429; Klein v. U. S. Casualty Co. (Mo. App.), 295 S. W. 833, l. c. 834; Reece v. Supreme Lodge K. P. (Mo. App.), 25 S. W. (2d) 1079, l. c. 1083; Kennedy v. National Accident & Health Ins. Co. (Mo. App.), 76 S. W. (2d) 748, l. c. 754.]

Under the pleadings and the evidence given by relators the defendants were entitled to a directed verdict, and the trial court was justified in granting defendants a new trial on the ground that it had erred in overruling defendants' demurrer to the evidence, offered at the close of relators' evidence.

It follows that the action of the trial court in granting defendants a new trial should be affirmed, and, it is so ordered. *Becker* and *McCullen, JJ.,* concur.