STATE OF MISSOURI, at the Relation of WILLIAM FEHRENBACH, et al., Appellants, v. FRANK B. LOGAN, et al., Respondents.

Springfield Court of Appeals, December 22, 1916.

1. **STATUTES OF LIMITATIONS: When They Begin to Run.** A Statute of Limitation generally begins to run only when the cause of action asserted accrued to the person asserting it and it does not accrue in the legal sense until it comes into being and the parties benefitted have a right to assert same in court.

2. **RIGHTS OF ACTION: Accrue When.** A right of action accrues whenever such a breach of duty has accrued or such a wrong has been sustained as will give a right to then bring and sustain a suit.

3. **STATUTES OF LIMITATION: Construction Placed On: When Actions Barred.** A Statute of Limitation will be so construed as not to bar an action until the statutory period has elapsed after the cause of action has come into substantial being and the party asserting it has a right to sue thereon. [Citing Sec. 1887, R. S. 1909.]

4. **CAUSES OF ACTION: Breaches of Duty: Public: Private: When Right of Action Arises.** There is a distinction between breaches of public duty and breaches of private duty as applied to public officers. In the case of a public duty, although indirectly due to an individual, the violation gives rise to a right of action in favor of the individual against the officer only when the former sustains damages as a consequence thereof and the statute runs from that time, not from the time when the duty is violated.

5. **———: Official Bonds: Breach of Offical Duty: When Limitation Begins to Run.** Where a public officer commits a wrongful act, not directly against an individual, a cause of action does not instantly exist for the wrong so as to set in motion the Statute of Limitations. Where an officer's wrongful conduct is a general violation of official duty as distinguished from a wrong directed at an individual, the wrong does not complete the cause of action, but the subsequent damage aids, or rather creates, the cause of action itself.

6. **STATUTES OF LIMITATION: When Begin to Run: Suit on Official Bond.** Action on official bond of a county recorder for breach of duty in entering satisfaction of a trust deed without production of the note secured. Plaintiff did not acquire an interest in the land until more than three years after said satisfaction was entered. He was not barred from suing on the recorder's bond by the three year Statute of Limitation because plaintiff's right did not accrue until after acquisition of an interest in the land and the statute did not begin to run until plaintiff's right accrued.

Appeal from Jasper County Circuit Court, Division Number Two.—*Hon. D. E. Blair*, Judge.

REVERSED AND REMANDED.

*Wolfe & Burnett* for appellants.

*Gray & Gray* for respondents.

STURGIS, J.—This is an action on the official bond of the recorder of deeds of Jasper County, and is the sequence of the decision of this court in Wilkins v. Fehrenbach, 180 S. W. 22. We held in that case that a mortgage or deed of trust did not lose its force and priority as a lien against the real estate conveyed by reason of a wrongful release of the same on the margin of the record by one not owning the secured note and not producing and having such note cancelled as required by section 2844, Revised Statutes 1909, notwithstanding the recorder had permitted such release to be made and had certified that the secured note had been produced and cancelled as the law directs. That suit was against the present relators as owners of the land, having purchased same by mesne conveyances from the maker of the deed of trust wrongfully released, and resulted in a judgment cancelling the release and foreclosing the deed of trust. The opinion in that case conceded that defendants, relators here, purchased said land in good faith believing same to be clear of said encumbrance which belief was induced by the wrongful and void release and certificate of the recorder. The present cause of action is predicated on the wrongful acts of the recorder in making such release.

A demurrer was sustained to relators' petition on the ground that on the facts stated the relators' cause of action is barred by the Statute of Limitations of three years contained in section 1890, Revised Statutes 1909. It will be sufficient to say that the petition alleges that the wrongful marginal release and certificate thereto by the recorder was made December 31, 1910; that thereafter in 1913 the relators, in good faith and relying on the fact that the records showed said land to be clear and free of said encumbrance, first loaned money on said land to the then record owner and later, in March, 1914, became the owners of said land by purchase under foreclosure proceedings and deeds duly made and recorded; that after unsuccessfully defending the suit of Wilkins v. Fehrenbach,

supra, both in the circuit court and this court, whereby said released deed of trust was declared a valid lien against relators' said property, the relators were compelled to and did discharge the lien and judgment in the amount of $1000, to their damage in that sum. The official bond of defendant as recorder, set forth in the petition, is conditioned that he will faithfully perform the duties enjoined by law as recorder and the breach thereof is set forth thus: "Plaintiffs further state that the said defendant, Frank B. Logan, has failed and neglected to perform the conditions of said bond in that he has not faithfully performed the duties enjoined on him by law as such recorder, in this, to-wit: that on the 31st day of December, 1910, the said Frank B. Logan negligently, carelessly, wrongfully and against and in contravention of the statutes of the State of Missouri in such cases made and provided, permitted and allowed one Rose McSherry to satisfy of record in his said office a certain deed of trust (describing it) for the purpose of securing the payment of a certain promissory note, in said deed of trust described, in the sum of eight hundred dollars, which said deed of trust had theretofore been duly and legally recorded in said office, in which said note said W. F. Shannon was the payee, without requiring the said W. F. Shannon or the said Rose McSherry, or anyone for the said W. F. Shannon, to produce and cancel the said promissory note in the presence of him the said recorder, and that said promissory note was not and never has been so produced and cancelled. But plaintiffs state that said Frank B. Logan, as said recorder, at the time of permitting said Rose McSherry to enter satisfaction of said deed of trust on the record thereof in his said office, as aforesaid, wrongfully and falsely caused to be entered thereon the certificate of said recorder that the said note described in the said deed of trust was produced and cancelled in the presence of said recorder."

It will thus be seen that the wrongful release of this deed of trust on which relators rightfully relied in purchasing this land as showing same free and clear

of this encumbrance and which they were afterwards compelled to pay, was made more than three years prior to such purchase and almost three years before relators had any interest in or dealing with such land. This suit was brought, however, within three years after relators first acquired an interest in said land and within a few months after they were compelled to and did discharge such encumbrance.

Defendants' contention is that since this suit was not instituted for more than three years after the wrongful act of the recorder was committed, the same is barred by the provisions of sections 1887 and 1890, Revised Statutes 1909, as follows: "Sec. 1887. Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued." "Sec. 1890. Within three years: First, an action against a sheriff, coroner or other officer, upon a liability incurred by the doing of an act in his official capacity and in virtue of his office, or by the omission of an official duty, including the payment of money collected upon an execution or otherwise." It will be seen that according to defendants' contention relators' cause of action was barred before it came into being, for certainly relators never had any cause of action prior to their having any dealings with or interest in this land. To so construe the statute is violative of the fundamental rule applicable to the construction of all limitation statutes, to-wit: that the same begins to run only when the cause of action asserted accrued to the person asserting it and it does not accrue in the legal sense until it comes into being and the parties benefitted have a right to assert same in court. [25 Cyc. 1067.] In refuting the idea that the Statute of Limitations could run against one before he is entitled to sue thereon, the Supreme Court, in Dyer v. Brannock, 66 Mo. 391, 422, said: "If the Statute of Limitations is construed to run against them from the death of the mother, it operated against parties who had no right of action, and who would have

been trespassers had they undertaken to enter. Indeed, upon this construction of our statute, had the husband lived three years or more after the death of his wife, the title of the heirs would be totally destroyed, since they cannot sue during the continuance of the particular estate, and before its termination, the three years from the death of the mother have gone by. . . . It is generally understood that the Statute of Limitations does not run against any one who has no right of possession. . . . The person barred by the statute is one whose right of entry has accrued, and who neglects to sue during the three years allowed after his right of action accrued." In Dyer v. Wittler, 89 Mo. 81, 14 S. W. 518, the court reaffirms this doctrine at pages 90 and 95. In Campbell v. Laclede Gas Co., 84 Mo. 352, 378, a majority of the Supreme Court took occasion to say that "a statute which deprives a married women of her property, for failing to sue for it in twenty-four years, when during all that time she had no right to the possession, and could not, therefore, maintain an action for such possession, is, in my judgment, plainly unconstitutional." In Aachen Ins. Co. v. Morton, 156 Fed. 654, 13 Ann. Cas. 692, the court, through Justice LURTON, said: "A right of action accrued whenever such a breach of duty has occurred or such a wrong has been sustained as will give a right to *then* bring and sustain a suit." Many decisions will be found asserting the doctrine that any Statute of Limitations will be so construed as not to bar an action until the statutory period has elapsed after the cause of action has come into substantial being and the party asserting it has a right to sue thereon.

In fact the reading of the statute itself, section 1887, now in question, so asserts, since it says that civil actions not for the recovery of real estate can be commenced within the period prescribed in the following sections "after the cause of action shall have accrued." The cause of action here did not accrue, that is come into being with someone capable of assert-

ing it in court, till within three years before this suit was filed.

The defect with defendants' theory and argument is that they assume that the wrongful act of the recorder is synchronous with the injury to relators. They fail to observe the well recognized distinction between actions founded on direct and certain injury following some wrongful or negligent act and those based on consequential and indirect damage flowing from such an act. [19 Ency. Law (2 Ed.), 200.] This distinction is especially applicable in cases arising from official neglect or misfeasance. Thus Wood on Limitations, sec. 178, states the law thus: "Every breach of duty does not create an individual right of action; and the distinction drawn by moralists between duties of perfect and imperfect obligation may be observed in duties arising from the law. Thus a breach of public duty may not inflict any direct immediate wrong on an individual; but neither his right to a remedy nor his liability to be precluded by time from its prosecution, will commence till he has suffered some actual inconvenience. But it is otherwise where there is a private relation between the parties, where the wrongdoing of one at once creates a right of action in the other." In 25 Cyc. 1149, we find this statement: "On the other hand a distinction has been made between breaches of public duty and breaches of private duty; it being held that in the case of public duty, although indirectly due to an individual, the violation gives rise to a right of action in favor of the individual against the officer only when the former sustains damage as a consequence thereof, and that the statute runs from that time, not from the time when the duty is violated." The very question before us received careful consideration in State, to use of Cardin v. McClellan et al., 113 Tenn. 616, 85 S. W. 267, 3 Ann. Cas. 992, a suit on the official bond of the register of deeds for failure to correctly record a deed, and we quote from that case: "The second assignment of error, which is filed in behalf of defendant's sureties, presents a question of more dif-

ficulty, and one that we have no case deciding. It is whether the cause of action of one who is injured by a breach of public duty by a public officer accrues and is complete when the breach or wrong is done, or when the consequential injury occurs. . . . The complainant insists that the failure of the register to correctly register the deed was a breach of duty which he primarily owed to the public and that he was not injured, and had no cause of action therefor, until his property was levied on and sold by creditor of his vendor, when his loss was sustained, and the right of action accrued and was complete, which was within six years next before he filed his bill, and therefore it is not barred. . . . Therefore a right of action against a public official growing out of a breach of an official duty involving individual rights is not complete and does not accrue until the happening of a consequential injury resulting proximately from the breach. The action not accruing and being complete until the injury to the individual occurs under the elementary principle that no time runs to the plaintiff until he has the right to sue, the Statute of Limitations does not begin to run until that time. If the rule was otherwise, meritorious actions might be barred before the plaintiff had the right to bring his suit. This would work gross injustice. It would be a denial to the injured party of his day in court. . . . It would seem like a mockery of justice to say that the law required him to sue before he had anything to sue for. The cases cited by appellant's counsel to the effect that the right of action for breach of contract occurs at the time of the breach are clearly distinguished from an action for official negligence, and the distinction is set forth in the cases from which we have quoted." In commenting on the above case, Justice LURTON, in Aachen Fire Ins. Co. v. Morton, 156 Fed. 654, 13 Ann. Cas. 692, said: "That was an action upon the official bond of a register of deeds, etc., for damages resulting from his failure to correctly register a deed placed in his hands for that purpose by the plaintiff. It was held that the

Statute of Limitations did not begin to run until the plaintiff had sustained some injury in consequence. But this was placed on the well recognized distinction between the liability of a public official for a breach of official duty and the right of action which may arise between persons having only private relations with each other when there has been a breach of some contract or duty which one personally owes to the other." Other cases holding this same doctrine as to the Statute of Limitations in actions based on the misfeasance of a public officer are, People v. Cramer, 15 Colo. 159, 25 Pac. 302; Steel v. Bryant, 49 Ia. 116; Bank of Hartford v. Waterman, 26 Conn. 324; Lee v. Wood, 85 Ala. 169, 4 So. 693. The case of State ex rel. v. Grizzard, 117 N. C. 105, 23 S. E. 93, cited by defendant, does hold a contrary doctrine, but we agree with the Supreme Court of Tennessee in the McClellan case, supra, that the better reasoning and weight of authority are against the view taken by the North Carolina court.

It might well be held, as illustrating the two lines of cases with reference to the time when the Statute of Limitations commences to run, that had the owner of the deed of trust wrongfully released brought an action against the recorder for any damage to her, such damage would be direct and immediate, and the Statute of Limitations would commence to run when the wrongful act was committed (State v. Walters (Ind.), 66 N. E. 182, 9 Am. St. 244; McKay v. Cooledge (Mass.), 105 N. E. 455), but as to relators no damage was then done and none was done till they dealt with the property on the false showing that the same was free and clear of this encumbrance. In the McKay case, supra, which was a suit on the official bond of a clerk, the court distinctly says that while the misconduct of the clerk was the initial wrong "that violation of his rights was personal to plaintiff . . . it was of such nature that the law implied a damage, even though in fact only nominal, for which an action might have been brought at once. The duty which the clerk is

alleged to have violated is one directly and instantly affecting the rights of the plaintiff. . . . Hence it is not necessary to discuss the distinction sometimes suggested, to the effect that a public officer is not not liable to the individual for breach of a public and official duty until there has been suffered a special and peculiar injury not common to the general public . . . a proposition which finds support in'' the cases above cited.

We find no case in this State holding the contrary of these views. A number are in line. State ex rel. v. Tittmann, 134 Mo. 162, 168, 35 S. W. 579, was a suit on a curator's bond and the court held that where the breach of the bond was merely formal and no damage then arose, the Statute of Limitations would not begin to run until the time substantial damages occur. The principle involved in Lesem v. Neal, 53 Mo. 412, is applicable here. That was an action on a sheriff's bond for the unauthorized release of attached property and there was a plea of the Statute of Limitations, the question being as to when the statute began to run, whether from the date of the release of the property or from the date of final judgment in the attachment suit, when the fact of damage was ascertained. The court held the latter and, in the course of the opinion, uses this language: ''In the case under consideration, at the time the goods were released by the defendant from the attachment, no right of action could accrue to the plaintiffs to sue therefor, even if the release was wrongful. Until they recovered their judgment in the attachment suit they had no right to sue; and, in fact, a right of action might never have accrued to them for said release.'' In State ex rel. v. Finn, 98 Mo. 532, 541, 11 S. W. 994, on a similar state of facts, the court said: ''Until plaintiff recovered its judgment in the attachment suit, it was not known whether or not it had any valid demand . . . or had suffered any substantial damage.''

The case most relied on by defendant is that of State ex rel. v. Musick, 145 Mo. App. 33, 130 S. W.

398, s. c. 165 Mo. App. 214, 145 S. W. 1184, a suit on
a notary's bond for falsely certifying the acknowl-
edgment of a deed. In that case the court held that
there is no statutory provision defining or fixing when
a cause of action accrues and the solution of that ques-
tion must be by recourse to the common law. The state-
ment of the cause of action there in suit shows that,
by reason of this false acknowledgment which plain-
tiff believed to be genuine and which was made for that
purpose, she accepted such deed to her damage. The
damage was therefore directly in consequence of the
false acknowledgment and contemporaneous therewith.
The court therefore properly held that the statute
began to run with the doing of the wrong, and that,
as there was no active concealment by the wrongdoer,
such time would not be postponed until after the
discovery of the wrong. To the same effect is State
ex rel. v. Stonestreet, 92 Mo. App 214, and we fully en-
dorse what is there said at pages 218 and 219, as
follows: "Where there is *no cause of action* in the
plaintiff *until the damage happens,* then the statute
will only begin to run *from the date of the damage.*
But where an officer commits a wrongful act *directly
against an individual,* it seems to us clear that a cause
of action then instantly exists for the wrong, not-
withstanding *all of the injury* has not yet followed.
The cause of action is at once complete when the *act
directed at the individual is committed.* The subsequent
damage which may follow is but additional measure
of the injury. . . . Where an officer's wrongful
conduct is *not a mere general violation of official duty,*
but, as before stated, is a wrong *directed at an individ-
ual,* the wrong as such is complete when committed and
completes a cause of action, the subsequent damage be-
ing consequences in no way aiding the cause of action
itself, though aggravating and measuring the injury."
It will be seen that the court carefully noted the line
of demarcation between cases where the wrongful act
of the public officer is directed against an individual
and affects him immediately and where such act causes

damage only indirectly and consequentially at a later date. There is no doubt but that the court rendering that opinion would hold the converse of what is there said, to-wit: That where, as here, a public officer commits a wrongful act *not* directly against an individual a cause of action does *not* instantly exist for the wrong; and the cause of action is *not* complete when the act not directed at the individual is committed; and where an officer's wrongful conduct is a general violation of official duty as distinguished from a wrong · directed at an individual, the wrong does *not* complete the cause of action and the subsequent damage does aid, or rather create, the cause of action itself. Schade v. Gehner, 133 Mo. 252, 34 S. W. 576, and Rankin v. Schaeffer, 4 Mo. App. 108, did not involve wrongful acts of a public officer and merely follow the general rule that a wrongful act causing damage which may be sued for at the time sets the statute in motion and the same is not postponed because the amount or extent of the damages is not then ascertained or ascertainable.

Our conclusion is that on the facts stated relators' cause of action is not barred by limitation, and the judgment of the circuit court sustaining the demurrer is reversed and the cause remanded for further proceedings in accordance with this opinion.

*Farrington, J,* concurs; *Robertson, P. J.* not sitting.