**CITY OF BURLINGTON,**
Iowa, Appellant,

v.

**WESTERN SURETY COMPANY,**
Appellee.

No. 98–06.

Supreme Court of Iowa.

Sept. 9, 1999.

Craig D. Warner of Aspelmeier, Fisch, Power, Warner & Engberg, P.L.C., Burlington, for appellant.

Richard J. Kirschman and Benjamin B. Ullem of Whitfield & Eddy, P.L.C., Des Moines, for appellee.

Considered by CARTER, P.J., and LAVORATO, NEUMAN, TERNUS, and HARRIS,* JJ.

TERNUS, Justice.

This case presents a narrow issue: Can an insured who incurs expenses to avoid a third-party liability claim recover its payment under a fidelity bond? We agree with the district court that the fidelity bond at issue in this case does not provide coverage for such payments. Therefore, we affirm the district court's order entering summary judgment for the insurer.

## I. Background Facts and Proceedings.

The fire department of the appellant, City of Burlington, maintained a master key to all the school buildings in the Burlington school district in order to have immediate access in times of emergency. The key was kept in a lock box on one of the fire trucks. In early 1996, the key was reported missing. Based on his investigation, the fire chief concluded that the key was inadvertently lost.

The City then undertook to replace all of the locks on the school district's buildings. Although the school district had not demanded this action or threatened to file suit, the City chose to replace the locks in order to avoid the possibility of even greater damage to the school district and, accordingly, an even greater liability claim against the City.

---

* Retired justice serving as senior judge pursu-      ant to Iowa Code section 602.9206 (1999).

Upon replacing the locks, the City sought coverage for its expenses from its insurer, appellee Western Surety Company. Western Surety had issued a public employees blanket bond to the City that was in effect at the time the key was lost. Under this policy, Western Surety agreed to indemnify the City for "[l]oss caused to the Insured through the failure of any of the Employees ... to perform faithfully his duties or to account properly for all monies and property received by virtue of his position or employment during the Bond Period." Western Surety denied coverage and this suit followed.

Both the City and Western Surety filed motions for summary judgment. The district court denied the City's motion and granted Western Surety's motion, concluding that the City's expenses did not fall within the terms of the insuring agreement.[1] The City appealed.

## II. *Scope of Review.*

We review a summary judgment ruling for correction of errors of law. *See Whicker v. Goodman*, 576 N.W.2d 108, 110 (Iowa 1998). Summary judgment is appropriate where the moving party shows there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *See* Iowa R. Civ. P. 237(c). Because the facts here are undisputed, our role is simply to decide whether the district court correctly held that the City's payment did not fall within the terms of the policy. *See Whicker*, 576 N.W.2d at 110.

## III. *Discussion.*

■ The crux of the dispute here is whether the expenses incurred by the City to replace the school district's locks constitute a "[l]oss caused to the Insured" within the meaning of the policy. Because the parties have offered no extrinsic evidence on the meaning of this policy language, interpretation of the policy terms is a question of law for the court. *See id.* We follow well-established rules in interpreting insurance policies: "The intent of the parties controls. We determine the parties' intent from the language of the policy, unless the policy is ambiguous." *Kibbee v. State Farm Fire & Cas. Co.*, 525 N.W.2d 866, 868 (Iowa 1994) (citation omitted). These rules of interpretation for insurance policies are equally applicable to fidelity bonds, such as the policy at issue here. *See Abilene Sav. Ass'n v. Westchester Fire Ins. Co.*, 461 F.2d 557, 559 (5th Cir.1972) (holding under Texas law that blanket bonds are to be construed in the same manner as insurance contracts generally); *Citizens' State Bank v. New Amsterdam Cas. Co.*, 177 Minn. 65, 224 N.W. 451, 453 (1929) ("Indemnity contracts or bonds are subject to the same general rules of construction as contracts of insurance....").

Neither party claims the policy here is ambiguous. They agree that it is a traditional bond indemnifying the insured for loss *to the insured.* Their disagreement centers on whether the expenses incurred by the City represent a loss to the City or a loss to a third party, the school district. Our analysis starts with a brief discussion of the nature of a fidelity bond.

■ The purpose of a bond is to guarantee the honesty and faithful performance of the insured's employees by protecting the employer/insured against loss. *See Central Nat'l Ins. Co. v. Insurance Co. of N. Am.*, 522 N.W.2d 39, 42 (Iowa 1994); *see also Concord v. Peerless Ins. Co.*, 110 N.H. 497, 272 A.2d 588, 590 (1970) ("The term 'faithful performance' ... goes further than honesty and implies that a per-

---

1. The district court denied the City's motion for summary judgment on the basis that, regardless of whether its payment fell within the insuring agreement, a genuine issue of material fact existed with respect to the reasonableness of the City's mitigation efforts. Because we conclude the City's payment does not fall within the terms of the insuring agreement, we do not address whether an issue of material fact existed as to the reasonableness of the City's action. For the same reason we do not consider the insurer's alternate argument that a policy exclusion precluded coverage for the City's claim.

son may be held responsible ... even though he has been entirely honest in his conduct."). Thus, a fidelity bond " 'is direct insurance procured by [the insured] in favor of himself.' " *Central Nat'l Ins. Co.*, 522 N.W.2d at 42 (quoting *Ronnau v. Caravan Int'l Corp.*, 205 Kan. 154, 468 P.2d 118, 122 (1970)).

■ A fidelity bond must be distinguished from a liability policy. A liability policy protects the insured against claims brought by third parties who have been injured by the insured's conduct. *See* 1 Eric Mills Holmes & Mark S. Rhodes, *Holmes's Appleman on Insurance, 2d* § 3.3, at 349 (1996). "The liability insurer essentially reimburses its insured for any liability it may have to the third party by paying the third party on the insured's behalf and benefit." *Id.* In contrasting liability insurance with a fidelity bond, it is helpful to note that in the liability context, the insured's loss is indirect; it is a third party who directly suffers the loss. *See id.*

■ With these distinctions in mind, we turn now to the facts before us. It is undisputed that a fire department employee failed "to account properly for ... property received by virtue of his position," namely, the school district's master key.[2] As a result, the school district was exposed to potential damage should someone use the master key to enter a school building to steal property or vandalize the building. This potential damage could be avoided or mitigated by replacement of the locks on the school buildings. These buildings were owned by the school district, not the City. Therefore, any damage to the buildings, theft of property, or expense of mitigation would initially be borne by the school district. The fact that the City voluntarily stepped forward to pay the cost of replacing the locks does not change these fundamental facts.

We conclude that the disappearance of the master key caused a loss to the school district, a third party. The City's potential liability for the school district's expenses or damages merely caused an *indirect* loss to the City. *See KAMI Kountry Broad. Co. v. United States Fidelity & Guar. Co.*, 190 Neb. 330, 208 N.W.2d 254, 255 (1973) (holding insured's payment to third party of damage caused to third party by insured's employee was not a direct loss covered by insured's fidelity bond). To interpret the fidelity bond as covering this indirect loss would be to convert the bond into a policy of liability insurance. Such was clearly not the intent of the parties as evidenced by the absence of any language indicating that the policy's coverage encompassed the City's liability to third persons.

We agree with the district court that Western Surety was entitled to summary judgment because the monies the City seeks to recover do not represent a "[l]oss caused to the Insured" within the meaning of the insurance contract. Therefore, we affirm.

**AFFIRMED.**

**2.** The fire department had a written policy that required department personnel "having custody of equipment and property to see that

it is properly maintained and returned to its place of storage."