**INVESTORS TITLE COMPANY, INC.,**
Respondent/Cross–Appellant,

v.

**Janice HAMMONDS, et al.,**
Appellants/Cross–
Respondents.

No. SC 87669.

Supreme Court of Missouri,
En Banc.

March 13, 2007.

Rehearing Denied April 17, 2007.

Nelson L. Mitten, Jennifer L. Geschke, Clayton, for Respondent/Cross–Appellant.

Patricia A. Redington, Cynthia L. Hoemann, Office of the St. Louis County Counselor, Clayton, for Appellants/Cross–Respondents.

WILLIAM RAY PRICE, JR., Judge.

## INTRODUCTION

St. Louis County ("County") and Janice Hammonds, the recorder of deeds ("Recorder") for County, appeal from the judgment of the trial court following a jury verdict in favor of Investors Title Company ("Investors"). Investors cross-appeals from the judgment. The judgment of the trial court is affirmed.

## FACTS AND PROCEDURE

Investors is a title company that routinely records documents related to real property transactions with the Recorder. Prior to 1995, title companies would pay filing fees each time they filed documents with recorder. For example, Investors typically would send an employee to the Recorder's office several times per day to file documents. Each time, the employee would wait while a staff member of the Recorder's office filed the documents and calculated filing fees. The employee would then write a check from Investors for the amount of the filing fees.

The procedures for title companies filing documents in the County changed in 1995. Investors was told by Dan O'Leary, the Recorder at that time, that it should deliver the documents to the Recorder, along with a signed check made payable to Recorder, but with the amount of the check left blank so that the Recorder's office could fill in the total amount at the end of

the day. At the close of business, Investors would receive a computer listing of the documents recorded along with a tape from an adding machine in the Recorder's office that purported to list the recording charges and the total amount filled in on the blank check.

Margaret King was employed by the County in the Recorder's office as a cashier and later as the head cashier. From 1995 to September 2001, King would routinely fill out Investor's blank checks with amounts that exceeded the actual sum due to the Recorder from Investors. She then removed cash from the cash drawer of the Recorder's office matching the amount overcharged. King concealed her theft by attaching an adding machine tape to the front of the files given to Investors that added up to the amount that she filled in the blank check each day.

The Recorder's office had a policy designed to ensure that the County received the proper amount of fees whereby the cashier and lead cashier were to check each other's work, but this policy was not followed. Instead the cashier and lead cashier divided the work by title companies. Although an examination of the computer printouts provided to Investors would have revealed the discrepancies, King's subterfuge went undiscovered for six years, until September 2001, when Investors finally did check the financial figures and immediately reported a problem to the Recorder.

The illegal activity by King ceased thereafter. During the period from 1995 to September 2001, however, King misappropriated hundreds of thousands of dollars through filling in inflated amounts on the blank checks provided by Investors to the Recorder.

King subsequently pleaded guilty to multiple counts of theft. Investors requested a refund of the amounts that it paid to the Recorder in excess of what it actually owed for recording documents during the period of King's illegal activities. The County refused to pay such a refund, and Investors initiated litigation against the Recorder in her official capacity and against the County.

The County cooperated with Investors to investigate the thefts and determine how much Investors had been overcharged. The parties disputed the applicable statute of limitations, but stipulated to the entry of exhibits that calculated the overcharges. If a three-year statute of limitations were to apply, the overcharges totaled $499,391. Alternatively, if the limitations period were five years, the overcharges totaled $727,215.

The County and Recorder filed a motion for summary judgment, which the trial court sustained in part and overruled in part, limiting the recovery of damages under Count I (money had and received) to a period of three years and granting summary judgment in their favor on Count II (breach of contract), Count III (establishment of prepaid accounts), Count IV (neglect of duty), Count VIII (negligence), and Count IX (conversion). Investors voluntarily dismissed Count VI (RESPA claim). The cause was thus tried to a jury on Count I (money had and received), Count V (due process), and Count VII (Equal Protection).

At the close of all evidence the trial court granted County's motions for directed verdict on Count V (due process claim) and Count VII (equal protection claim). The case was submitted to the jury on the remaining count, money had and received. The jury awarded Investors $499,391.00 in damages, and the trial court added an additional sum of $143,701.46 in prejudgment interest for a total of $ 643,092.46.

## A.

### THE COUNTY'S POINTS ON APPEAL

The County and the Recorder (hereinafter referred to collectively as "the County") assert the following points of error:

(1) Investors failed to make a submissible case because there was no evidence of any written contract as required by section 432.070 [1].

(2) The evidence did not establish the essential elements for money had and received because there was no evidence that the County gained anything from Investors' overpayments and, thus, no evidence of a benefit conferred or appreciation by the County of the fact of such benefit.

(3) The evidence did not establish the essential elements for money had and received because Margaret King stole from Investors by falsifying the checks and the totals, which enabled her to steal cash from County in the exact amount of the overpayments before County became aware of the overpayments.

(4) The trial court erred in withdrawing from the jury's consideration evidence that Investors failed to check the receipts provided by the County because the evidence concerned an issue still before the jury.

(5) The County was entitled to submit a "change in circumstances" affirmative defense instruction because there was sufficient evidence for the jury to decide that Margaret King stole cash in the exact amount of Investors' overpayments and that the County was no more at fault than Investors in failing to discover that King was inflating Investors' checks and totals.

## DISCUSSION

### I.

▪ In its first point, the County argues that Investors failed to make a submissible case because there was no evidence of a written contract as required by section 432.070 and the County cannot be liable based upon an implied contract. Although the County has framed this as an evidentiary issue, the question is purely one of law: Does section 432.070 preclude Investors from recovering the overcharges from the County in an action for money had and received? This Court reviews the trial court's judgment de novo. *Dudley v. Agniel,* 207 S.W.3d 617, 618 (Mo. banc 2006).

### a.

▪ "The appropriate action when one party has been unjustly enriched through the mistaken payment of money by the other party is an action at law for money had and received." *Blue Cross Health Services, Inc. v. Sauer,* 800 S.W.2d 72, 75–76 (Mo.App.1990). "Although the action is purely one at law, it partakes of the nature of equity, and whenever it is shown that one has money in his possession which rightfully belongs to another, the law establishes privity between the parties, and implies the promise and obligation upon which the action rests." *Eichenberg v. Magidson's Estate,* 170 S.W.2d 105, 108 (Mo.App.1943). "The action for money had and received has always been one favored in the law and the tendency is to widen its scope—it being a flexible form of action, levying tribute on equitable, as well as strictly legal doctrines; so that, it has become axiomatic that the action lies where the defendant has received or obtained possession of the money of the plaintiff, which, in equity and good con-

---

1. All statutory references are to RSMo 2000, unless otherwise stated.

science, he ought to pay over to the plaintiff." *Webster v. Sterling Finance Co.*, 351 Mo. 754, 173 S.W.2d 928, 931 (1943).

#### b.

Section 432.070 states, in relevant part: No county ... shall make any contract, unless the same be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto[.] [2]

Section 432.070 was enacted to preclude parties who have performed services for a municipality or county or other governmental entity without entering into a contract from subsequently recovering the value of those services based upon an implied contract. *Crutchfield v. Warrensburg*, 30 Mo.App. 456, 462 (Mo.App.1888). "To subject the city to liability for such services, the statute declares affirmatively that the contract must be made and executed in writing prior to the service performed, for it must express the consideration on its face, to be performed or executed *subsequent* to the making of the contract." Id. (emphasis in original). "The manifest purpose of the requirement is that the terms of the contract shall, in no essential particular, be left in doubt, or to be determined at some future time, but shall be fixed when the contract is entered into. This was one of the precautions taken to prevent extravagant demands, and to restrain officials from heedless and ill-considered engagements." *Id.* (quoting *Woolfolk v. Randolph County*, 83 Mo. 501, 506 (Mo. banc 1884)). The County argues that section

432.070 precludes Investors from asserting a claim against it for money had and received based upon an implied contract.

#### c.

In support of its argument that Investors may not recover for money had and received, the County cites *Crutchfield; Carter v. Reynolds County*, 315 Mo. 1233, 288 S.W. 48 (1926); *Donovan v. Kansas City*, 352 Mo. 430, 175 S.W.2d 874 (1943); and *Fulton Nat'l Bank v. Callaway Memorial Hospital* 465 S.W.2d 549 (Mo.1971). In *Crutchfield,* an attorney who had represented a city in various matters was precluded from recovering the value of the services he rendered because his agreement to represent the county did not comply with the writing requirements of section 432.070's antecedent statute. 30 Mo. App. at 463. In *Carter,* the plaintiff was precluded from recovering for physical labor and materials rendered pursuant to an agreement with a judge. 288 S.W. at 50. In *Donovan,* the plaintiff was precluded from recovering the value of hundreds of thousands of dollars worth of food delivered to city pursuant to unwritten telephone orders. 175 S.W.2d at 884–885. The statute has also been used to preclude recovery where the writing requirement was arguably satisfied, but where the county's action was beyond the scope of its powers. *See Fulton Nat'l Bank,* 465 S.W.2d 549 (transferee of notes endorsed by a county hospital precluded from recovering value of notes because the county was not authorized to incur debt).

#### d.

Investors asserts that this case is different. It argues that the County's obligation to give restitution is based upon a contract implied by law, specifically chap-

**2.** 432.070 RSMo.

ter 59 RSMo, and not a contract implied by fact as in all of the cases cited above. Investors points to *Karpierz v. Easley,* 68 S.W.3d 565 (Mo.App.2002), as the controlling authority.

In *Karpierz,* the Kansas City police department confiscated money from the plaintiff while searching his house pursuant to a warrant. Instead of following the procedures outlined in Missouri's Criminal Activity Forfeiture Act (CAFA),[3] the police forfeited the money to the federal government. The police department then received part of the money back from the federal government. The plaintiff sued for money had and received, alleging that the police were bound to follow CAFA procedures when confiscating money and that he was entitled to the return of any money forfeited without following such procedures. The police department argued that the plaintiff could not recover because section 432.070 precluded the court from basing restitution upon an implied contract.

The court held that the application of those cases cited by the County above is limited to situations where the obligation to repay would be based solely upon a contract implied in fact. "A contract 'implied in law' or 'quasi-contract' is not a contract at all but an obligation to do justice even though it is clear that no promise was ever made or intended." *Karpierz,* 68 S.W.3d at 570. "[The] authority to assume the obligation that gives rise to Karpierz['s] cause of action is not at issue in this case. [The government's] obligation to handle the seized money in a proper fashion arises out of law from CAFA's statutory provisions." Id. at 573. "[T]he provisions of section 432.070 do not render the obligation at issue void, as they would in a case where a contract was implied in fact." *Id.* Furthermore, the court found that "[a]llowing [the govern-

ment] to retain the seized money would serve to neuter the provisions of CAFA[.]" *Id.* Thus, the common law remedy of restitution stepped in to compel the state to return the money. *Id.* at 573–574.

**e.**

The reasoning in *Karpierz* is applicable to this case because the County's obligation to refund overpayments to Investors is also based upon statute. The legislature has enacted a comprehensive statutory scheme governing the relationship between the recorder and people seeking to file documents. See sections 59.010 to 59.660. Section 59.330 provides that it *"shall* be the duty of recorders to record [all deeds, conveyances, assignments, bonds, etc.]." (emphasis added). Sections 59.310 (counties) and 59.313 (St. Louis City) specify the correct format for documents to be filed and further provide that the recorder of deeds *"shall be allowed"* certain fees based upon the type and size of the documents to be filed. (emphasis added).

This situation is very different from the cases cited by County. The underlying transaction here is not illegal or outside the County's powers; it is specifically prescribed by the provisions of chapter 59. The concerns that the legislature sought to address by section 432.070 are not present; this is not a situation where there was a need to restrain individual officials from obligating the county to pay for or perform unauthorized actions, nor is the county receiving services from other parties where the county has not properly approved an agreement for specific work at a specific price.

 "[L]aws are to be interpreted *in pari materia* in order to determine their

3. Section 513.647, RSMo 1994.

**296**

meaning. Under this doctrine, statutes involving related subject matter are construed together as though constituting one consistent act, even if adopted at different times." *Ronnoco Coffee Co. v. Dir. of Revenue*, 185 S.W.3d 676, 683 (Mo. banc 2006). Because disallowing an action for money had and received based upon 432.070 in this situation would render meaningless the fee limitations contained in sections 59.310 and 59.313, the former cannot apply to Investors' action for money had and received.

Since the County obtained money from Investors to which it was not entitled, the law compels its return. The County's obligation in this regard is implied in law, and section 432.070 will not preclude the return of money that the County was never authorized to collect. This conclusion does not run afoul of any of the cases cited by County that precluded recovery on contracts implied in fact and gives effect to the intent of both section 432.070 and chapter 59.

**II.**

In its second and third points, the County argues that the trial court erred in denying its motion for a directed verdict and motion for judgment notwithstanding the verdict on Count I because the evidence did not establish the essential elements for money had and received. See *Woods v. Hobson*, 980 S.W.2d 614, 618 (Mo.App.1998). Specifically, the County asserts in its second point that because Margaret King filled in Investor's checks for an inflated amount, and then stole cash in an amount equaling the overcharges, the County's records show that it received the exact amount of money it was entitled to, and thus, did not benefit. In its third point, it argues that King's subterfuge compels the conclusion that retention of the overpayments without refund would

not be unjust. In both points, the County argues that given Margaret King's actions in stealing the overpayments from the County, the evidence was not sufficient to support recovery under a money had and received theory. It also attempts to argue that it was Investor's money that was stolen, not the County's.

**a.**

The standard for reviewing a trial court's denial of a motion for directed verdict is whether or not the plaintiff made a submissible case. *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 456–457 (Mo. banc 2006). In determining whether the evidence was sufficient to support the jury's verdict, the evidence is viewed in the light most favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict. Id. This Court will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion. *Id.*

**b.**

Simply put, the evidence supports a finding of two separate series of events. One series of events is the overcharging to Investors. Investors' checks to the County were written for amounts greater than the County was authorized to collect. The County would then deposit those checks into its own account with the rest of the money it received for filings. Every time Investors paid an inflated amount, the County received and deposited that inflated amount. This evidence supports a finding that the County thereby received and appreciated a benefit.

The second series of events is the related thefts from the County's cash drawer. Although the two series occurred simulta-

neously and were part of the same scheme, they nonetheless were also separate. King did not steal Investor's money from the cash drawer. It was the County's money, King merely covered the theft by overcharging Investors. As the discussion under section I above demonstrates, this resulted in the County charging fees in excess of what was allowed under chapter 59. This evidence allows a finding that acceptance and retention of the overcharged fees was unjust.

## III.

 In its fourth and fifth points, the County argues that the trial court erred in giving a withdrawal instruction concerning evidence that Investors negligently failed to detect the overcharges and in refusing to give a changed circumstance instruction to diminish or preclude recovery by Investors. "This Court reviews de novo, as a question of law, whether a jury was properly instructed." *Harvey v. Wash.*, 95 S.W.3d 93, 97 (Mo. banc 2003).

### a.

 In its fourth point, the County argues that the trial court erred in withdrawing from the jury's consideration the actions of Investors in failing to examine the receipts provided each day by the County. The jury was instructed to determine the County's liability for money had and received in Instruction Seven.[4] In order for Investors to recover, the jury had to find that "the County accepted and retained [a] benefit under circumstances in which retention without refund would be unjust."

4. Jury Instruction Seven reads in its entirety: "On the claim of plaintiff Investors Title Co., Inc. for money had and received, your verdict must be for defendants St. Louis County and Janice Hammonds and against plaintiff Investors Title Co., unless you believe:
First, Investors Title Co., Inc. conferred a benefit on St. Louis County; and

Upon motion by Investors, the trial court gave a withdrawal instruction that removed evidence of Investors' failure to verify the amounts they were charged at the end of each day. Jury Instruction Eight, patterned after MAI 34.02 (5th Ed.), states:

> The evidence that Plaintiff Investors Title Co., Inc. did or did not take action to verify charges made by the St. Louis County Recorder of Deeds is withdrawn from the case and you are not to consider such evidence in arriving at your verdict with respect to Plaintiff Investors Title Co., Inc.'s claim against Defendants St. Louis County and Janice Hammonds for money had and received.

In its fifth point, the County argues that the trial court erred in refusing to give a proffered jury instruction stating the County's "change of circumstances" defense because there was sufficient evidence for the jury to decide that Margaret King stole cash in the exact amount of Investor's overpayments and that this rendered it unjust for the County to have to refund Investors' overpayments.

> The proposed instruction at issue states:
> If you find in favor of plaintiff Investor's Title Co., Inc., your verdict must be for defendants St. Louis County and Janice Hammonds if you believe:
>
> First, that circumstances have so changed that it would be unjust to require defendants to make restitution; and
>
> Second, that defendants were no more at fault than was plaintiff.

Second, St. Louis County accepted and retained the benefit; and
Third, St. Louis County accepted and retained the benefit under circumstances in which retention without refund would be unjust."

If any party has failed to use care to ascertain relevant facts, such party is at fault within the meaning of this instruction.

### b.

■ The trial court did not err in either of the above determinations. The basis of Investors' claim against the County was not based upon the County's negligence or some other type of fault that might be compared with the conduct of Investors. Instead Investors' claim is for an overcharge of the amount allowed by statute for the performance of a governmental duty. Sections 59.310 and 59.313 provide that the recorder of deeds "*shall be allowed*" certain fees based upon the type and size of the documents to be filed. (Emphasis added). The term "allowed" as used in the statute acts as a limitation upon the amount of compensation the County may receive, and there is no basis in law to justify retention of amounts collected in excess of this statutory authority. *See Estate of Ballard v. Clay County*, 355 S.W.2d 894 (Mo.1962); *Williams v. Carroll County*, 167 Mo. 9, 66 S.W. 955 (1902); *Ada County v. Gess*, 4 Idaho 611, 43 P. 71 (1895)

The law gives many advantages to governmental entities, including official immunity, sovereign immunity, and the public duty doctrine. It also allows entities such as the County to purchase insurance policies to protect against losses that result from the dishonesty of employees such as Margaret King. It simply does not allow a governmental entity to charge more for services rendered than prescribed by statute.

### B.

### INVESTORS' POINTS ON APPEAL

In its cross-appeal, Investors asserts the following points of error:

(1) Under section 516.120 RSMo Investors is entitled to damages for five years prior to the filing of its petition because the suit was against St. Louis County.

(2) Investors introduced sufficient evidence to support a judgment under 42 U.S.C. section 1983 for violation of Investors' rights under the due process clause of the United States Constitution in that County overcharged Investors for recording services, the overcharging resulted from County's deviation from its own established policies and practices, and County failed and refused to refund such overcharges.

(3) Investors introduced sufficient evidence to support a judgment under 42 U.S.C. section 1983 for violation of Investors' rights under the equal protection clause of the United States Constitution in that the County unlawfully and intentionally discriminated against Investors when it refused to issue Investors a refund for overpayments.

(4) The County waived sovereign immunity because it purchased insurance coverage for conversion and negligence.

### DISCUSSION

### I.

■ Investors argues in its first point that the trial court erred in limiting Investors' recovery to three years prior to the date of filing suit pursuant to section 516.130(1). It argues that the five-year limitation period set out in section 516.120(1) RSMo is applicable instead.

Section 516.120(1) provides that a five-year limitations period applies to "all actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 516.110, and except upon

judgments or decrees of the court of record, and *except where a different time is herein limited* [.]" (emphasis added). Section 516.130(1) applies the three-year limitations period to "[a]n action against a sheriff, coroner or other officer, upon a liability incurred by the doing of an act in his official capacity and in virtue of his office, or by the omission of an official duty, including the nonpayment of money collected upon an execution or otherwise[.]"

The present suit is "against an officer." *State ex rel. Fehrenbach v. Logan*, 195 Mo.App. 171, 175, 190 S.W. 75 (Mo.App.1916)(antecedent version of statute). Under chapter 59, collecting fees in return for filing documents is an act "in [the Recorder's] official capacity." Finally, the Recorder's failure to pay back fees to which she is not entitled under that chapter involves "the nonpayment of money collected upon an execution or otherwise." The trial court did not err in applying the three-year limitation period contained in section 516.130(1). *See Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir.1984).

## II.

■ In its second and third points, Investors argues that the trial court erred in granting the County's motion for directed verdict on Investors' Due Process and Equal Protection claims brought under 42 U.S.C. section 1983. The standard of review for the trial court's grant of the County's motion for directed verdict is whether Investors made a submissible case. A case may not be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence. *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 456 (Mo. banc 2006).

### a.

■ Investors argues in its second point that the trial court erred in granting the County's motion for a directed verdict on Count V because Investors produced sufficient evidence to support a judgment on the claim brought under 42 U.S.C. section 1983 for violation of Investors' rights under the due process clause of the United States Constitution. Investors' argument fails because the present lawsuit provides an adequate postdeprivation remedy.

■ "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). "For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Id.*

As the discussion above demonstrates, an action for money had and received is available to compel the return of overpaid funds. See *Clark v. Kansas City Missouri Sch. Dist.*, 375 F.3d 698 (Eighth Cir.2004)(holding that a plaintiff could not prevail on a due process claim for the deprivation of property due to a state employees' unauthorized acts because the Missouri state law remedy of replevin was available). The trial court did not err in directing a verdict in favor of the County on Investors' federal due process claim.

### b.

■ In its third point, Investors argues that the trial court erred in granting the County's motion for a directed verdict on Count VII because Investors introduced sufficient evidence to support a

claim brought under 42 U.S.C. section 1983 for violation of Investors' rights under the equal protection clause of the United States Constitution. Investors concedes that it is not a member of a suspect class, or indeed a member of a "class" at all. However, equal protection claims may be brought by a "class of one," where the plaintiff alleges that he or she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

The evidence in this case merely indicates that Investors was the unfortunate victim of overcharges related to an employee's theft scheme and that the County did not believe that it was obligated to return the overcharges. This does not rise to the level of an equal protection claim, especially where Investors has failed to introduce any evidence of others who received refunds under similar circumstances.

### III.

■■■ In its fourth point, Investors argues that the trial court erred when it granted the County's motion for summary judgment on Count VIII (Negligence) and County IX (Conversion) of Investors' first amended petition on the grounds that the County did not waive sovereign immunity. They assert that the County waived sovereign immunity by purchasing insurance that covered the torts pleaded in those counts.

■■■ The review of a trial court's grant of summary judgment is essentially de novo. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of summary judgment is purely an issue of law. *Id.*

Section 537.610 [5] "provides an independent basis for waiving sovereign immunity—a basis cemented in the existence of coverage for the damage or injury at issue under the language of the insurance policy." *State ex rel. Cass Medical Center v. Mason*, 796 S.W.2d 621, 624 (Mo. banc 1990). The insurance policy at issue is an employee dishonesty policy, not a liability policy. It only covers the County for the theft of its property. It specifically states that "this insurance is for [the County's] benefit only. It provides no rights or benefits to any other person or organization." Thus, while the agreement may provide coverage for the County for theft of its money, it does not provide coverage to Investors for being overcharged. It does not constitute a waiver of sovereign immunity. *See Lynch Properties, Inc. v. Potomac Insurance Company of Illinois*, 140 F.3d 622 (5th Cir.1998)("Employee dishon-

---

**5.** Section 537.610.1 provides that:

The commissioner of administration, through the purchasing division, and the governing body of each political subdivision of this state, notwithstanding any other provision of law, may purchase liability insurance for tort claims, made against the state or the political subdivision, but the maximum amount of such coverage shall not exceed two million dollars for all claims arising out of a single occurrence and shall not exceed three hundred thousand dollars for any one person in a single accident or occurrence, except for those claims gov-

erned by the provisions of the Missouri workers' compensation law, chapter 287, RSMo, and no amount in excess of the above limits shall be awarded or settled upon. Sovereign immunity for the state of Missouri and its political subdivisions is waived only to the maximum amount of and only for the purposes covered by such policy of insurance purchased pursuant to the provisions of this section and in such amount and for such purposes provided in any self-insurance plan duly adopted by the governing body of any political subdivision of the state.

esty policies insure against the risk of property loss through employee dishonesty. Liability policies, by contrast, require an insurer to discharge an obligation of the insured to a third party for some act of the insured or its employee. Although employee dishonesty policies may cover loss of third-party property in the possession of the insured, these polices do not serve as liability insurance to protect employers against tortious acts committed against third-parties by their employees.")(internal citations omitted); and *City of Burlington, Iowa v. Western Surety Company*, 599 N.W.2d 469 (Iowa 1999)("To interpret the [employee dishonesty policy] as covering this indirect loss would be to convert the [policy] into a policy of liability insurance. Such was clearly not the intent of the parties as evidenced by the absence of any language indicating that the policy's coverage encompassed the City's liability to third persons.").

## CONCLUSION

The judgment of the trial court is affirmed.

All concur.